Filed 7/25/16  Certified for Publication 8/15/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LAURA BETH BARICKMAN et al., | B260833 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC504911) |
| v. | |
| MERCURY CASUALTY COMPANY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Judge Susan Bryant-Deason.  Affirmed.

Hager & Dowling, Christine W. Chambers, John V. Hager and Thomas J. Dowling for Defendant and Appellant.

The Yarnall Firm and Delores A. Yarnall; Dewitt Algorri & Algorri and Mark S. Algorri for Plaintiffs and Respondents.

————————————

Timory McDaniel, driving while intoxicated in a car insured by Mercury Casualty Company, ran a red light, struck and seriously injured Laura Beth Barickman and Shannon Mcinteer, who were in a crosswalk with the walk signal in their favor. Barickman and Mcinteer agreed to settle their claims against Timory[1] for her insurance coverage limits, $15,000 each; but Mercury would not agree to additional language inserted by Barickman and Mcinteer's lawyer in Mercury's form release of all claims: "This does not include court-ordered restitution." After Barickman and Mcinteer sued Timory and settled the case with a stipulated judgment for $3 million, Timory assigned her rights against Mercury to Barickman and Mcinteer, who filed this action for breach of contract and breach of the implied covenant of good faith and fair dealing. Following a trial by reference, judgment was entered in favor of Barickman and Mcinteer for $3 million plus interest from the date of judgment in the personal injury action. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Accident and Claim Processing*

During the early morning hours on July 11, 2010, Timory entered the intersection of Pacific Coast Highway and East Second Street in Long Beach against a red light and struck Barickman and Mcinteer with her sports utility vehicle while they were in a crosswalk. Timory fled the scene, but was apprehended shortly thereafter. It was determined Timory was driving under the influence of alcohol. The incident was witnessed by several individuals, who gave statements to the police.

The day after the incident Timory informed Mercury she had been in an accident, but, on advice of counsel, did not provide any additional information. On August 4, 2010 Mark Algorri, counsel for Barickman and Mcinteer, sent Mercury a letter describing their extensive injuries and enclosing a copy of the police report.

---

[1] Because Timory McDaniel and her mother, Helen McDaniel, who was authorized to act on Timory's behalf while she was incarcerated, share the same name, we refer to them by their first names for convenience.

On September 1, 2010 Mercury offered Timory's policy limits of $15,000 per person to Barickman and Mcinteer. On September 24, 2010 Algorri requested Timory complete a statement of assets to assist his clients in determining whether to accept Mercury's offer in satisfaction of all civil claims. During the following months Algorri and Oliver Chang, the Mercury field representative responsible for processing the claim, exchanged correspondence about the statement of assets.

In late October 2010 Timory was sentenced to three years in state prison and ordered to pay approximately $165,000 in restitution. In mid-December 2010 Algorri informed Mercury that Barickman and Mcinteer accepted the policy limits offer and returned signed releases on the form provided by Mercury, but added an explanatory sentence to Mercury's recitation of a $15,000 payment: "This does not include court-ordered restitution."[2] Algorri also demanded as a condition of settlement that payment be made within five days of delivery of the executed releases.

For the next several weeks Mercury considered whether it would agree to the additional language inserted by Algorri, requesting and receiving extensions of time to respond. As part of its review process, Mercury consulted with Timory's mother, Helen, as well as Timory's criminal defense attorney, Bruce McGregor. Additionally, Chang spoke to Algorri to determine whether the proposed language was intended only to ensure the release did not waive Barickman and Mcinteer's right to the restitution award or also to preclude offset against the restitution award by the amount of the insurance settlement. As reflected in a note written by Chang memorializing a December 23, 2010 conversation, "[Algorri] just says he doesn't want this settlement to stop his client[s]

---

[2]     In substantially identical letters Algorri wrote Chang confirming that Barickman and Mcinteer had each "settled her case against your insured Timory J. McDaniel for her policy limits of $15,000 (excluding court-ordered restitution) . . . ." The letters enclosed the form releases provided by Mercury, signed by each of Algorri's clients, with asterisks next to the recitation of the "payment of $15,000," with the typed explanation, "THIS DOES NOT INCLUDE COURT-ORDERED RESTITUTION." The printed release on Mercury's form covered "all claims, demands, actions, causes of action, known or unknown, suspected or unsuspected relating to the referenced incident and matters" and included a waiver of the provisions of Civil Code section 1542.

3

from receiving restitution[.] [¶] Asked if this settlement w/[Mercury] would impact/offset any restitution settlement and he says he is not sure[.] [¶] He hasn't handled restitution for quite some time and can't answer us right now[.] [¶] He says he doesn't believe that is the case but he can't be sure of it[.] [¶] Advised we will provide to him a response by 1/7/2011[.]" A note by Chang of a January 6, 2011 conversation states, "[Algorri] confirms that his clients want 100 percent restitution on top of the 15K [policy limit] offers for settlement [Mercury] is offering. . . . He says that his clients are firm on this and won't reconsider anything less."

On January 7, 2011, the final deadline to respond imposed by Algorri, Chang informed him Mercury required a further extension because it did not have "an official response" from McGregor. Algorri responded, "As you know Mercury has dilly dallied for months in concluding a settlement, even though they have had full power, authority, obligation and opportunity to do so from the outset. [¶] Hence, there is no settlement of this case and my clients are now forced to file suit, effective immediately, to pursue fair and reasonable compensation for their devastating losses."

On January 10, 2011 Chang advised Algorri that McGregor had instructed Mercury not to accept the revised releases and asked Algorri to reconsider whether the matter could be settled without the added language.[3] Although it is not apparent from the record what precipitated Algorri's next letter to Chang or whether he was addressing a specific conversation, on January 11, 2011 Algorri wrote, "Just to make my point clear Mercury has intentionally mischaracterized my added language. The added language simply eliminates any argument that the Court's restitution order is wiped out by the

---

3    In a January 14, 2011 letter to Mercury, McGregor explained the reason he did not approve the language: "[W]e would object to any clause in the release of [Timory's] policy limits to the plaintiffs which waives her legal right to offset those payments against any criminal court ordered restitution. We believe that the current law specifies that if Ms. McDaniel personally paid insurance premiums [then] she is entitled under law to offset any payments in regards to any criminal restitution order." McGregor attached to his letter a decision from this court filed December 13, 2010, *People v. Vasquez* (2010) 190 Cal.App.4th 1126.

4

release.  Your characterization that Mercury's payments would not . . . act as a credit on what your insured owes under the restitution order is not only false but, as you undoubtedly know, would violate Cal. Law under [*People v. Bernal* (2002) 101 Cal.App.4th 155]."

    2. *The Personal Injury Action; the Continuing Dispute Regarding the Additional Language*

On January 13, 2011 Barickman and Mcinteer sued Timory for personal injuries. For the next several weeks Chang and Algorri exchanged letters disputing what had led to the impasse.  For example, in a January 25, 2011 letter Algorri wrote, "To reiterate my past discussions with you, my clients never objected to a Mercury payment set off against the court ordered restitution and axiomatically, they never requested that your insured waive any set off.  Indeed, I told you early on that case law specifically allowed your insured a set off, and I gave you the case citation.  I again clarified this position to you in my letter of January 11, 2011.  Also, the language my client[s] added to the release simply clarified their rights of restitution – that there could be no later dispute or subsequent contrary argument made by your insured."  Mercury appointed the law firm of Ghormley & Associates to represent Timory in the personal injury lawsuit.

Although Helen had informed Chang on February 4, 2011 that Algorri's proposed "vague and confusing language" was not acceptable, on February 24, 2011 she advised Chang that she and McGregor had met with the restitution paralegal assigned to Timory's case and had learned the language "would **not** and could **not** impact the insurance money offsetting the restitution.  [¶]  Therefore, with Timory's agreement, and acting as her Attorney in Fact, I am instructing Mercury Insurance to Pay the policy limits of $15,000.00 to each of the claimants at the earliest possible date, despite any pending civil action."

On March 8, 2011 Scott Ghormley spoke to Algorri about the dispute regarding the proposed language.  Notwithstanding that Helen had advised Mercury she no longer objected to the modified release and had instructed Mercury to pay Barickman and Mcinteer as soon as possible, in a letter written that day Ghormley offered to draft

5

language making clear Algorri's intent that his clients' right to restitution be protected with no waiver of any offset rights so the matter could be settled. Algorri, however, chose to proceed with the personal injury lawsuit that had been filed the previous month. Additionally, notes made in Mercury's online claims processing database on March 29 and April 1, 2011 indicate Mercury was still attempting to persuade Barickman and Mcinteer to sign the unedited releases.

In August 2012 the personal injury action was settled with a stipulated judgment in favor of Mcinteer against Timory for $2.2 million and in favor of Barickman against Timory for $800,000. Timory assigned her rights against Mercury to Barickman and Mcinteer in exchange for their agreement not to attempt to collect the judgment against her. Mercury paid each woman the $15,000-per-person policy limits.

3. *The Bad Faith Action*

On April 4, 2013 Barickman and Mcinteer filed the instant action asserting claims for breach of contract and breach of the implied covenant of good faith and fair dealing. The complaint alleged Timory's liability for the catastrophic injuries caused to Barickman and Mcinteer was virtually certain, as was the likelihood that their damages would result in judgments against Mercury's insured well in excess of the $15,000/$30,000 policy limits. As a result, Mercury's failure to make an offer without unacceptable terms and conditions, its refusal to settle the case at policy limits when it had the opportunity to do so, and its unwillingness to make efforts to reach a reasonable settlement constituted a breach of its obligation of good faith and fair dealing, exposing Timory to excess damages.

On May 13, 2014 the parties agreed to a trial by reference of all issues of fact and law pursuant to Code of Civil Procedure section 638; the Honorable Robert Feinerman (retired) was appointed as referee. The parties stipulated that Justice Feinerman's statement of decision would be entered as a judgment as though the case had been tried to the court pursuant to Code of Civil Procedure section 644, subdivision (a).

After a bench trial, which included testimony from Chang, Algorri and claims-handling experts for both sides, the referee found Mercury had breached the covenant of

good faith and fair dealing by refusing to accept the releases with the language added by Algorri.  Resolving Chang and Algorri's conflicting testimony and the documentary evidence regarding Algorri's intent, the referee found, "In December 2010 Mercury asked Algorri for a clarification of his intent in adding the additional language to the release.  Algorri told them that he was just interested in preserving his client[s'] restitution rights and was not seeking to affect McDaniel's rights to an offset for the amounts paid by Mercury against the restitution ordered by the criminal court.  Algorri reconfirmed his position in writing in January of 2011 in letters he sent to Mercury.  Despite these assurances from Algorri, Mercury refused to go forward with the settlements without an unedited release."

The referee further explained, based upon the totality of the evidence, the language did not constitute a nonacceptance of the policy limits and was essentially superfluous: "It was unnecessary for [Algorri] to put it in the release, because the law was clear that a release in a civil case would not release a defendant in a criminal case from a restitution order made by a criminal court.  The language added was not vague or ambiguous.  It only dealt with the Plaintiffs' legal right to receive restitution.  It did not refer to the insured's right to offset the money paid by the insurer against the restitution ordered by the criminal court.  Mercury's contention that the language added to the release 'did not protect the insured against a waiver of her right to restitution offset' has no merit."  With respect to Helen's, Timory's and McGregor's objection to the language, the court found, "[T]he law is clear that an insured does not have a right to object to a settlement within the policy limits of an automobile liability policy."  The referee awarded Barickman and Mcinteer damages in the amounts of the judgment in the underlying case ($2.2 million for Mcinteer; $800,000 for Barickman) plus 10 percent interest from the date of the August 31, 2012 judgment and costs of suit.  The superior court entered judgment based on the statement of decision on November 14, 2014.

## DISCUSSION

1. *Standard of Review*

Code of Civil Procedure section 638, subdivision (a), provides that a referee may be appointed by agreement of the parties to "hear and determine any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision." The judgment based on a statement of decision following a consensual general reference, as here, is treated as if the action had been tried by the court (Code Civ. Proc., § 644, subd. (a)) and is reviewed on appeal using the same rules that apply to a trial court's decision following a bench trial. (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513.) ""'"In general, in reviewing a judgment based upon a statement of decision following a bench trial, 'any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]' [Citation.] In a substantial evidence challenge to a judgment, the appellate court will 'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]' [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment."'" (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1102; accord, *Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765.)

2. *Governing Legal Principles*

a. *The covenant of good faith and fair dealing*

"In each policy of liability insurance, California law implies a covenant of good faith and fair dealing. This implied covenant obligates the insurance company, among other things, to make reasonable efforts to settle a third party's lawsuit against the insured. If the insurer breaches the implied covenant by unreasonably refusing to settle the third party suit, the insured may sue the insurer in tort to recover damages proximately caused by the insurer's breach." (*PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 312; see *id.* at pp. 314-315 ["covenant imposes a number of

8

obligations upon insurance companies, including an obligation to accept a reasonable offer of settlement"].) "The duty to settle is implied in law to protect the insured from exposure to liability in excess of coverage as a result of the insurer's gamble—on which only the insured might lose. (*Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 941.) Thus, "the insurer must settle within policy limits when there is substantial likelihood of recovery in excess of those limits." (*Ibid.*; see *Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 792, fn. 12 ["reasonableness of a settlement offer is to be evaluated by considering whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer"].)

"[A]n insurer, who . . . refuses to accept a reasonable settlement within the policy limits in violation of its duty to consider in good faith the interest of the insured in the settlement, is liable for the entire judgment against the insured even if it exceeds the policy limits." (*Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 661; accord, *Coe v. State Farm Mut. Auto Ins. Co.* (1977) 66 Cal.App.3d 981, 989.)

   b. *Restitution*

A victim is entitled to restitution for economic losses incurred as a result of the commission of a crime from the defendant convicted of that crime. (Pen. Code, § 1202.4.) In addition to compensating the victim, a restitution order is intended to rehabilitate a defendant and deter crime. (*People v. Vasquez* (2010) 190 Cal.App.4th 1126, 1133 (*Vasquez*).)

"An order of restitution pursuant to [Penal Code] section 1202.4 does not preclude the crime victim from pursuing a separate civil action based on the same facts from which the criminal conviction arose." (*Vasquez*, *supra*, 190 Cal.App.4th at p. 1132.) A restitution order reimburses the crime victim for only economic losses; noneconomic losses, such as pain and suffering, are recoverable in a civil action. (*Ibid.*) "Because of the separate interests at stake and different purposes served by a restitution order and a civil action for damages by the crime victim, as well as the different categories of damages recoverable in the two proceedings, the settlement of a civil action and release

9

of the defendant by the crime victim does not discharge the defendant's responsibility to satisfy the restitution order:  'Even when a victim obtains a settlement from a company that insured the defendant for civil liability, the court in a criminal action may order the defendant to pay victim restitution.  This is so because the victim "might rationally choose to accept an insurance settlement for substantially less than his or her losses rather than risk the uncertain . . . possibility that the defendant will pay the entire restitution amount" [citation], and the "victim's willingness to accept the [insurance settlement] in full satisfaction for all civil liability, . . . does not reflect the willingness of the People to accept that sum in satisfaction of the defendant's rehabilitative and deterrent debt to society."'"  (*Id.* at p. 1133, fn. omitted.)

Although payments received by a crime victim from the victim's insurance company or from an independent third party such as Medicare for economic losses suffered as a result of the defendant's criminal conduct cannot reduce the amount of restitution the defendant owes, the defendant is entitled to an offset to the extent those payments are from his or her own insurance for items of loss included in the restitution order.  (*Vasquez*, *supra*, 190 Cal.App.4th at pp. 1133-1134; see *People v. Bernal* (2002) 101 Cal.App.4th 155, 167-168.)  "'The defendant's own insurance company is different than other sources of victim reimbursement, in that (1) the defendant procured the insurance, and unlike the other third party sources, its payments to the victim are not fortuitous but precisely what the defendant bargained for; (2) the defendant paid premiums to maintain the policy in force; (3) the defendant has a contractual right to have the payments made by his insurance company to the victim, on his behalf; and (4) the defendant's insurance company has no right of indemnity or subrogation against the defendant.  In sum, the relationship between the defendant and its insurer is that payments by the insurer to the victim are 'directly from the defendant.'"  (*Vasquez*, at p. 1134; accord *Bernal*, at pp. 167-168.)

10

3. *Substantial Evidence Supports the Finding Mercury Unreasonably Refused To Accept the Modified Release*[4]

    a. *The offering of the policy limits was not sufficient in and of itself to defeat a bad faith claim as a matter of law*

Relying primarily on language from *Graciano v. Mercury General Corp.* (2014) 231 Cal.App.4th 414 (*Graciano*), Mercury contends it acted in good faith as a matter of law because it timely (nine weeks after the accident) offered Timory's policy limits to Barickman and Mcinteer. According to Mercury, the only reason the case did not settle was Algorri's insistence on the unacceptable additional language he had drafted, not its failure to offer Timory's policy limits.

Mercury reads far too much into the holding and analysis in *Graciano*. In that case Sonia Graciano had been injured after she was struck by a car driven by the defendant's insured. Less than three weeks after Graciano's attorney contacted the insurance company, misidentifying the driver, the applicable policy number and the date of the accident, the insurance company completed its investigation, identified the correct insured and policy number and offered the full policy limits to Graciano. That offer was made within the 10-day time limit specified in a policy limits demand letter sent by Graciano's attorney that continued to misidentify the driver and referred to an expired insurance policy. Graciano did not accept the offer and instead pursued her previously filed action against the driver. Graciano obtained a judgment in excess of $2 million and received an assignment of the driver's rights against his insurer. Graciano then sued the insurance company for wrongful failure to settle. The complaint alleged the insurance

---

[4]    Barickman and Mcinteer argue Mercury's challenge to the sufficiency of the evidence should be deemed forfeited because it failed to submit an adequate record on appeal. We agree the record is deficient—Mercury failed to include key documents including Algorri's January 11, 2011 letter to Chang. Mercury's argument the record is adequate because it includes the evidence Mercury contends is insufficient (as opposed to all the evidence bearing on the issues) borders on frivolous (see Cal. Rules of Court, rule 8.124(b)(1)(B) [appendix must contain trial exhibits "the appellant should reasonably assume the respondent will rely on"]). Nevertheless, we reach the merits because Barickman and Mcinteer have filed a respondents' record that permits our review of the issues.

11

company "could have and should have earlier discovered the facts, and should have made the full policy limits offer more quickly." (*Graciano*, *supra*, 231 Cal.App.4th at pp. 418-419.)

The Court of Appeal reversed, holding there was no substantial evidence the insurance company had unreasonably rejected an offer to settle the driver's liability because the only demand letter from Graciano's attorney identified a different driver and a different, expired insurance policy. (*Graciano*, *supra*, 231 Cal.App.4th at pp. 427-428.) The court also held there was no substantial evidence the insurance company had unreasonably failed to accept an otherwise reasonable offer within the time specified for acceptance. The court explained, "A claim for bad faith based on an alleged wrongful refusal to settle also requires proof the insurer unreasonably failed to accept an otherwise reasonable offer within the time specified by the third party for acceptance. [Citation.] However, when a liability insurer *timely* tenders its 'full policy limits' in an attempt to effectuate a reasonable settlement of its insured's liability, the insurer has acted in good faith as a matter of law [citations] because 'by offering the policy limits in exchange for a release, the insurer has done all within its power to effect a settlement.'" (*Id.* at p. 426.)

Mercury relies on the *Graciano* court's assessment that the insurer in that case had acted in good faith as a matter of law (that is, that no substantial evidence supported a conclusion it had acted in bad faith) to assert that it, too, acted in good faith as a matter of law. However, that argument ignores the fundamental principle, articulated in *Graciano* and other cases, that, "[w]hen a claim is based on the insurer's bad faith, . . . the ultimate test is whether the insurer's conduct was unreasonable under all of the circumstances." (*Graciano, supra*, 231 Cal.App.4th at p. 427; accord, *Bosetti v. United States Life Ins. Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1237 ["[i]f an insurer is to avoid liability for bad faith, its actions and positions with respect to the claim of an insured, and the delay or denial of policy benefits, must be 'founded on a basis that is *reasonable under all the circumstances*'"]; see *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 888 ["[o]rdinarily, the question whether the insurer has acted unreasonably in responding to a settlement offer is a question of fact to

12

be determined by the jury"]; see also *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 724, fn. 7.)  In *Graciano* there were no other circumstances that raised a question of the insurer's good faith either before or after it tendered the full policy limits.  As the appellate court held, the evidence was undisputed that the insurer did "'all within its power to effect a settlement.'"  (*Graciano*, at p. 435.)[5]

In the case at bar, in contrast, although Mercury did initially act in good faith by offering Timory's policy limits—the minimum $15,000/$30,000 bodily injury liability coverage required by California law (Veh. Code, §§ 16050, 16056, subd. (a))—in exchange for a general release of all claims, there were disputed facts, including significant issues of credibility, as to whether Mercury did all within its power to effect a settlement once Barickman and Mcinteer accepted that offer but proposed a slightly modified version of the accompanying release.  Here, as is true in many bad faith cases, the reasonableness of the insurer's claims-handling conduct was a question of fact to be resolved following a trial.  (See *Lee v. Fidelity National Title Ins. Co.* (2010) 188 Cal.App.4th 583, 599; *McCoy v. Progressive West Ins. Co.* (2009) 171 Cal.App.4th 785, 794; see also *Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425, 430 ["liability based on an implied covenant exists whenever the insurer refuses to settle in an appropriate case and that liability may exist when the insurer unwarrantedly refuses an offered settlement where the most reasonable manner of disposing of the claim is by accepting the settlement"].)  Mercury's contrary position, if accepted, would mean an insurer that at

---

5  In support of its holding the *Graciano* court cited *State Farm Mut. Auto. Ins. Co. v. Crane* (1990) 217 Cal.App.3d 1127, 1136, in which the Court of Appeal held only that "in the present context" the insurer had acted in good faith as a matter of law by making a timely policy limits settlement offer, rejecting the argument it was bad faith not to evaluate the likelihood of success of its settlement offer.  And the *Graciano* court quoted *Lehto v. Allstate Ins. Co.* (1994) 31 Cal.App.4th 60, 73, in which the appellate court rejected the argument the insurer should have attempted to settle the case without obtaining a full set of releases from the injured parties, holding that, "by offering the policy limits in exchange for a release, the insurer has done all within its power to effect a settlement."  Neither case stands for the proposition asserted by Mercury that, regardless of any other circumstances, a timely policy limits settlement offer insulates an insurer from a claim of bad faith.

13

one point acted in good faith during settlement negotiations has fully discharged its obligations under the implied covenant and has no further responsibility to make reasonable efforts to settle a third party's lawsuit against its insured. Mercury cites no authority for that rather remarkable proposition.

b. *Substantial evidence supports the referee's finding that Mercury unreasonably rejected the policy limits settlement proposed by Algorri*

Barickman and Mcinteer each agreed in mid-December 2010 to settle her civil claims against Timory for $15,000, as offered by Mercury, after their lawyer had finished his due diligence regarding Timory's insurance, assets and employment. The only obstacle to completion of the settlement was the dispute between Algorri and Mercury over the language of the accompanying release. Mercury contends the addition proposed by Algorri could have been interpreted as a waiver by Timory of her right to an offset and it had an obligation to its insured not to jeopardize that right. (See *Coe v. State Farm Mut. Auto Ins. Co.*, *supra*, 66 Cal.App.3d at p. 994 ["[b]ad-faith refusal to accept a settlement offer cannot occur where 'acceptance' would itself be bad faith"].) However, after hearing conflicting testimony from Algorri and Chang regarding their conversations as to the import of the language added by Algorri—"this does not include court-ordered restitution"—the referee found, in the portion of his statement of decision quoted above, that Algorri assured Mercury both orally and in writing that he intended only to preserve his clients' basic restitution rights and was not seeking to eliminate Timory's right to an offset for the amounts paid by Mercury. In view of that finding, Algorri's added language was simply intended to incorporate and make explicit what *Vasquez*, *supra*, 190 Cal.App.4th 1126 and *People v. Bernal*, *supra*, 101 Cal.App.4th 155 required: A civil settlement does not eliminate a victim's right to restitution ordered by the criminal court, but the defendant is entitled to an offset for any payments to the victim by the defendant's insurance carrier for items included within the restitution order. Based on these foundational findings and Timory's certain exposure to substantial liability, the referee could properly conclude that Mercury's refusal to accept the release as amended by Algorri or, at least, to present to Barickman and Mcinteer in a timely fashion a revised

14

release that included both Algorri's language and his explanation of its meaning (for example, by inserting after Algorri's addition, "and does not affect the insured's right to offset") was unreasonable.  (See *Heredia v. Farmers Ins. Exchange* (1991) 228 Cal.App.3d 1345, 1360 [insurer's duty of good faith requires it to explore details of a settlement offer with a view toward resolving issues that may take the offer outside policy limits]; cf. *Betts v. Allstate Ins. Co.* (1984) 154 Cal.App.3d 688, 708 [insurer should seek clarification rather than simply reject settlement offer it finds ambiguous or incomplete].)

Instead of accepting the amended release or modifying it to clarify the mutual intent of the parties, Mercury purported to place the decision whether to settle in the hands of Timory's criminal defense lawyer, McGregor, without providing him with the relevant facts.  The referee impliedly found that Chang had neglected to communicate to McGregor in December that Algorri sought only to preserve his client's right to seek criminal restitution rather than to disturb Timory's offset rights.  (See *State Bar of California v. Statile* (2008) 168 Cal.App.4th 650, 673 [reviewing court presumes trial court made all factual findings that support the judgment].)  This implied finding is supported by McGregor's letter dated January 14, 2011, in which he "object[ed] to any clause in the release . . . which waives [his client's] legal right to offset those payments against any criminal court ordered restitution" and argued that his client was "entitled under law to offset [those] payments."  Had McGregor been aware of Algorri's stated position that he was not seeking to alter Timory's offset rights, there would have been no need for such an objection and argument.  Instead, a proposed language change to clarify Algorri's intent in modifying the release would have sufficed.  In view of the referee's findings that Algorri clearly conveyed the limited purpose of his proposed language, there is thus no merit to Mercury's additional argument that it had to consult with Helen, as Timory's legal representative, and Timory's criminal defense attorney because the additional language in the release potentially affected Timory's rights on a matter outside the policy.

15

In sum, the referee's finding that Mercury breached its duty of good faith and fair dealing and that, as a result, it was liable for the amounts of the judgment entered against its insured, is supported by the evidence presented at trial.

## DISPOSITION

The judgment is affirmed.  Barickman and Mcinteer are to recover their costs on appeal.


                                             PERLUSS, P. J.
We concur:


        ZELON, J.


        BLUMENFELD, J.*

---

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LAURA BETH BARICKMAN et al., | B260833 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC504911) |
| v. | |
| MERCURY CASUALTY COMPANY, | ORDER CERTYFING OPINION FOR PUBLICATION (NO CHANGE IN JUDGMENT) |
| Defendant and Appellant. | |

THE COURT:

The opinion in this case filed July 25, 2016 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), respondents' and nonparty, Grassini, Wrinkle & Johnson's, requests pursuant to California Rules of Court, rule 8.1120(a) for publication are granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____
PERLUSS, P. J.         ZELON, J.         BLUMENFELD, J.[*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.