Filed 8/4/21  P. v. Shoker CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| THE PEOPLE, | C090991 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF181846) |
| v. | |
| PARAMJEET SINGH SHOKER, | |
| Defendant and Appellant. | |

Defendant Paramjeet Singh Shoker pled guilty to one count of driving with a blood alcohol level of .08 percent or more causing injury and admitted that he had suffered two prior DUI convictions and had caused great bodily injury.  On appeal, he argues:  (1) his trial counsel was ineffective in failing to seek pretrial mental health diversion under Penal Code section 1001.36, subdivision (b)(1);[1] (2) the trial court imposed an unauthorized sentence by ordering him to pay victim restitution for the damage of the victim's vehicle under section 1202.4, subdivision (f); and (3) the trial

_____

[1] Further undesignated statutory references are to the Penal Code.

1

court erred in imposing certain assessments and restitution fines without holding an evidentiary hearing to determine his ability to pay them.

We will affirm.

## I.  BACKGROUND

On February 27, 2019, defendant was charged in count 1 with driving under the influence (DUI) of alcohol causing injury (Veh. Code, § 23153, subd. (a)); in count 2 with driving with a blood alcohol level of .08 percent or more causing injury (Veh. Code, § 23153, subd. (b)); in count 3 with misdemeanor driving on a suspended license (Veh. Code, § 14601.2, subd. (a)); in count 4 with misdemeanor driving a vehicle not equipped with an interlock ignition device (Veh. Code, § 23247, subd. (e)); in count 5 with an infraction for driving with a .01 percent or more blood alcohol level while on probation for a prior DUI (Veh. Code, § 23154, subd. (a)); and in count 6 with an infraction for failing to stop at a stop sign (Veh. Code, § 21802, subd. (a)).  With respect to counts 1 and 2, it was also alleged that defendant had suffered two prior DUI convictions within the previous 10 years (Veh. Code, § 23566, subd. (a)), had caused great bodily injury (§ 12022.7, subd. (a)), and that defendant's blood alcohol level was .15 percent or more (Veh. Code, § 23578).

On April 15, 2019, defense counsel informed the court that defendant was at a behavioral health facility after being released from the hospital.  Defense counsel then declared a doubt as to defendant's competency under section 1368.  The court ordered all criminal proceedings suspended.  After reviewing Dr. Deborah Schmidt's report on her examination of defendant, the court found him competent to stand trial and reinstated criminal proceedings.

Defendant pled guilty to count 2 and admitted that he had suffered two prior DUI convictions and had caused great bodily injury.  He was advised that he faced a maximum seven-year prison term, and he entered the open plea with the understanding

2

the remaining counts and allegations would be dismissed with a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754.

Prior to sentencing, defense counsel filed a statement in mitigation of sentence in which she requested that defendant be placed on probation and indicated he was prepared to complete a residential treatment program to address his alcohol issues. She indicated that he had a 30-year history with alcohol-related criminal activity. Defendant subsequently appeared at the sentencing hearing with newly retained counsel, who requested a continuance of the sentencing hearing "to explore [Assembly Bill No.] 1810 issues." Defense counsel did not file a motion related to Assembly Bill No. 1810 but declared a doubt as to defendant's competency under section 1368. The court again suspended criminal proceedings and appointed Dr. Schmidt. The court reviewed Dr. Schmidt's second report, found defendant competent to stand trial, and reinstated criminal proceedings.

The court sentenced defendant to the middle term of three years on count 2, plus three years consecutive for the great bodily injury enhancement, for a total term of six years in state prison. The court ordered defendant to pay a conviction assessment of $30 (Gov. Code, § 70373), a court operations assessment of $40 (§ 1465.8), a $4 Emergency Medical Air Transportation Act assessment (Gov Code, § 76000.10), and a restitution fine of $300 (§ 1202.4, subd. (b)), with an additional $300 parole revocation fine, which was stayed pending successful completion of parole (§ 1202.45). Additionally, the court ordered defendant to pay $2,706.13 in victim restitution.

Defendant submitted letters to the court indicating that he wished to withdraw his plea and that he would like to receive treatment at a program. Appellate counsel filed a motion in this court to construe the letters as a notice of appeal and request for certificate of probable cause in the superior court. This court granted the requests, and the superior court issued a certificate of probable cause.

## II. DISCUSSION

### A. *Ineffective Assistance of Counsel*

Defendant contends his counsel was ineffective in failing to seek mental health diversion under section 1001.36. Specifically, defendant argues that counsel was ineffective "when, despite arguing that, in light of [defendant]'s mental disorders, [defendant] should be placed into a program and granted probation, counsel did not argue that [defendant] should be diverted under the newly enacted Penal Code sections 1001.35 and 1001.36." (Emphasis omitted.) We disagree.

Effective June 27, 2018, "the Legislature enacted sections 1001.35 and 1001.36 as part of Assembly Bill No. 1810 (2017-2018 Reg. Sess.) . . . . [Citation.] Section 1001.36 gives trial courts the discretion to grant pretrial diversion for individuals suffering from certain mental health disorders. (§ 1001.36, subd. (a).)" (*People v. Frahs* (2020) 9 Cal.5th 618, 626.) "The stated purpose of the diversion statute 'is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders.' (§ 1001.35, subds. (a)-(c).)" (*Ibid.*)

Section 1001.36 defines "pretrial diversion" as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." (§ 1001.36, subd. (c).) If a defendant is charged with a qualifying offense, a trial court may grant pretrial diversion if it finds all of the following: (a) the defendant suffers from a qualifying mental disorder; (b) the mental disorder was a significant factor in the commission of the charged offense; (c) in the opinion of a

4

qualified mental health expert, the defendant's symptoms will respond to mental health treatment; (d) the defendant consents to diversion and waives his or her right to a speedy trial; (e) the defendant agrees to comply with treatment as a condition of diversion; and (f) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (*Id.*, subd. (b)(1)(A)-(F).)

If the six criteria in section 1001.36, subdivision (b)(1), are met, and if the trial court "is satisfied that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant" (§ 1001.36, subd. (c)(1)(A)), the court may order diversion into an approved mental health treatment program for up to two years (*id.*, subd. (c)(1) & (3)). If the defendant commits an additional offense or otherwise performs unsatisfactorily in the diversion program, the court may reinstate the criminal proceedings. (*Id.*, subd. (d).) "If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion," and "the arrest upon which the diversion was based shall be deemed never to have occurred." (*Id.*, subd. (e).)

A defendant bears the burden of making a prima facie showing that he meets the minimum requirements of eligibility for diversion. (§ 1001.36, subd. (b)(3).) Even if a defendant otherwise satisfies the six eligibility requirements, the court must nonetheless be satisfied that the recommended mental health treatment program "will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (c)(1)(A).) "Before approving a proposed treatment program, the court shall consider the request of the defense, the request of the prosecution, the needs of the defendant, and the interests of the community." (§ 1001.36, subd. (c)(1)(B).)

To establish ineffective assistance, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced the defendant. (*People*

*v. Ledesma* (1987) 43 Cal.3d 171, 216-218 (*Ledesma*); *Strickland v. Washington* (1984) 466 U.S. 668, 687-692.)

In measuring counsel's performance, judicial review is highly deferential. (*Ledesma, supra*, 43 Cal.3d at p. 216; *In re Andrews* (2002) 28 Cal.4th 1234, 1253.) "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an *appellate claim* of ineffective assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) When the strategic reasons for challenged decisions are not apparent from the record, we will not find ineffective assistance of counsel unless there could have been " ' "no conceivable tactical purpose" ' " for counsel's acts or omissions. (*People v. Earp* (1999) 20 Cal.4th 826, 896; see *People v. Arce* (2014) 226 Cal.App.4th 924, 930-931.)

The record demonstrates defense counsel was aware of section 1001.36 once it was enacted because counsel requested a continuance to explore options related to the new legislation, but there is no information in the record that explains why defense counsel did not pursue diversion on defendant's behalf. While defendant argues no tactical reason could excuse counsel's omission to seek mental health diversion, we disagree.

Certainly, defendant's mental health issues were well known to defense counsel, as counsel declared a doubt as to defendant's competency under section 1368. Nevertheless, defense counsel could have chosen not to request diversion for a variety of reasons. Specifically, counsel could have discussed the matter with defendant, and he may have refused to consent to diversion or defendant could have refused to comply with mental health treatment. (§ 1001.36, subd. (b)(1)(D) & (E).) Counsel may also have determined that there was insufficient evidence to support one or more of the requirements for mental health diversion. There also could be other reasons that reasonably led defense counsel to conclude that the trial court would have ruled that

6

defendant was ineligible for mental health diversion. Counsel may have believed that the trial court would have found that defendant posed a risk of danger to public safety due to the fact this was defendant's eleventh DUI with a high blood alcohol content enhancement, and he was on probation for a prior DUI at the time he committed the current offense. The record contains no information one way or the other. "Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) Nor has defendant shown "affirmative evidence that counsel could have had 'no rational tactical purpose' for these decisions." (*Id.* at p. 200.)

Because there are legitimate reasons why defense counsel may have chosen not to pursue a mental health diversion eligibility hearing on defendant's behalf, we cannot conclude defense counsel's performance was objectively unreasonable. Under these circumstances, an ineffective assistance claim is more appropriately decided in a habeas corpus proceeding. (*People v. Gray* (2005) 37 Cal.4th 168, 211 [rejecting claim of ineffective assistance of counsel because it "is more appropriately raised in a petition for a writ of habeas corpus"]; *People v. Jones* (2003) 29 Cal.4th 1229, 1263, habeas granted in *Jones v. Chappell* (C.D.Cal. 2014) 31 F.Supp.3d 1050 [issues requiring review of matters outside the record are better raised on habeas corpus rather than on direct appeal]; *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 [a claim of ineffective assistance of counsel relating to " ' "why counsel acted or failed to act in the manner challenged" ' " is more appropriately decided in a habeas corpus proceeding].)

B.    *Victim Restitution*

Defendant contends that the trial court imposed an unauthorized sentence "when it ordered [him] to pay $1,640.69[] to [the victim's] auto insurance company as victim restitution under [] Section 1202.4, subdivision (f)." (Emphasis omitted.) He argues that because he was convicted of DUI with injury to the victim, he cannot be ordered to pay

7

restitution for the cost of damage to the victim's automobile.  In the alternative, he argues his counsel was ineffective in failing to object to an unauthorized sentence.  We disagree.

The victim in this case requested $2,706.13 in total restitution as follows:  $180.99 for medical expenses; $1,640.69 in property damage to the victim's vehicle, which was reimbursed to him by his insurance provider because defendant did not have insurance; $159.00 for damaged earphones; and $725.45 for reimbursement for the value of a plane ticket he was unable to utilize as a result of his injuries due to the offense.  The probation report stated that the victim claimed the $1,640.69 for the damage to his car "on behalf of his insurance company."  The trial court imposed victim restitution in the amount requested, and defense counsel did not object.

A crime victim is entitled to restitution for economic losses caused by a defendant's criminal conduct.  (Cal. Const., art. I, § 28, subd. (b)(13)(B); § 1202.4, subd. (a)(1) & (f).)  The amount of restitution "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct."  (§ 1202.4, subd. (f)(3).)  "Thus, restitution not only requires a crime, a victim, and an economic loss, but the victim must have actually suffered the economic loss because of the criminal conduct."  (*People v. Busser* (2010) 186 Cal.App.4th 1503, 1508.)  "The Legislature intended restitution to 'restore the economic status quo' by returning to the victim ' "funds in which he or she has an ownership interest" ' following a criminal conviction.  [Citation.]  However, 'a restitution order "is not . . . intended to provide the victim with a windfall.  [Citations.]" ' [Citation.]  Therefore, 'restitution of the victim is only ordered if the victim suffers economic loss.' [Citation.]  . . .  Victims are only entitled to an amount of restitution so as to make them whole, but nothing more, from their actual losses arising out of the defendants' criminal behavior."  (*Id.* at p. 1510.)  "[V]ictim restitution is limited to economic loss but is unlimited in the amount that can be ordered."  (*People v. Harvest* (2000) 84 Cal.App.4th 641, 649.)

8

When calculating the amount of restitution, the court must use a " 'rational method that could reasonably be said to make the victim whole.' " (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498.)  The amount of restitution must have a " 'factual and rational basis.' " (*Id.* at p. 499.)  "We review a restitution order for an abuse of discretion." (*Id.* at p. 498.)  "A victim's restitution right is to be broadly and liberally construed." (*Id.* at p. 500.)  " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " (*Ibid.*)

Defendant first contends that he could not be ordered to pay for the cost of totaling the victim's vehicle, because he "was neither charged nor convicted of totaling [the victim's] vehicle."  But section 1202.4, subdivision (f)(3) provides that "[t]o the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct."  Here, the damage to the victim's vehicle was a direct result of defendant's criminal conduct of driving under the influence and causing an accident in which the victim was injured and the victim's car was damaged.  Thus, the trial court was well within its discretion when it ordered defendant to pay for the cost of the damage to the victim's vehicle sustained in the accident he caused.  (See *People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321 ["tort principles of causation apply to victim restitution claims in criminal cases"].)

Defendant next contends that the restitution award is unauthorized because the victim's "insurance company is not a direct victim" and could therefore not be a lawful recipient of victim restitution.  While the probation report stated that the victim was requesting the money "on behalf" of his insurance company because it had reimbursed him $1,640.69 for the damage defendant caused, the court ordered restitution to the victim, not to the victim's insurance company.  Thus, the court imposed the restitution for the benefit of the victim, not the victim's insurance company.  The insurance company was not a direct recipient of victim restitution, nor has defendant shown that the victim

9

was acting as the insurance company's agent based on the notation in the probation report alone. He cites no authority to support the novel position that a crime victim can become an agent for his or her insurance company by claiming victim restitution that includes losses reimbursed by his or her insurance company.

Further, because the payment to the victim came from the victim's insurance company rather than defendant's insurance company, defendant is not entitled to an offset or reduction in the amount of restitution owed. California courts have repeatedly held that "[p]ayments received by a crime victim from his or her insurance company or from an independent third party for economic losses suffered as a result of the defendant's criminal conduct cannot reduce the amount of restitution the defendant owes." (*People v. Vasquez* (2010) 190 Cal.App.4th 1126, 1133-1134; accord, *People v. Birkett* (1999) 21 Cal.4th 226, 246 ["the immediate victim was entitled to receive from the probationer the full amount of the loss caused by the crime, regardless of whether, in the exercise of prudence, the victim had purchased private insurance that covered some or all of the same losses"]; *Barickman v. Mercury Casualty Co.* (2016) 2 Cal.App.5th 508, 518 ["payments received by a crime victim from the victim's insurance company or from an independent third party such as Medicare for economic losses suffered as a result of the defendant's criminal conduct cannot reduce the amount of restitution the defendant owes"]; *People v. Hume* (2011) 196 Cal.App.4th 990, 996 ["Consistent with the statute, payments to the victim by the victim's *own insurer* as compensation for economic losses attributed to a defendant's criminal conduct *may not* offset the defendant's restitution obligation"].)

Finally, defendant contends that his attorney was ineffective in failing to object to the restitution award because it was an unauthorized sentence. As we have discussed, the restitution award was not unauthorized and the trial court was well within its discretion in imposing the restitution award. Thus, defendant cannot show that his attorney was

10

ineffective for failing to object on the basis of an unauthorized sentence or that he suffered prejudice as a result. (*Ledesma, supra*, 43 Cal.3d at p. 216.)

C.      *Imposition of Mandatory Court Assessments and Restitution Fine*

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), defendant argues the court operations and conviction assessments and imposition of restitution under section 1202.4 must be stayed pending an ability to pay determination. Defendant also perfunctorily asserts forfeiture is improper because he suffered ineffective assistance of counsel when his trial counsel failed to object to the imposed fines and fees under *Dueñas*.

We need not decide whether defendant forfeited his ability to pay argument because this argument is without merit. Failure to assert a meritless position does not demonstrate ineffective assistance of counsel. (*People v. Kipp* (1998) 18 Cal.4th 349, 377.)

Defendant's appeal hinges on the analysis in *Dueñas* finding an ability to pay hearing is required before imposing fines and fees, and we are not persuaded that this analysis is correct. Our Supreme Court is now poised to resolve this question, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under section 1465.8 and Government Code section 70373, but not restitution fines under section 1202.4. (*Kopp, supra,* at pp. 95-96.)

In the meantime, we join several other courts in concluding that the principles of due process and equal protection do not require determination of a defendant's present ability to pay before imposing the fines and assessments at issue in *Dueñas* and in this proceeding. (*People v. Cota* (2020) 45 Cal.App.5th 786, 794-795; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279; *People v. Hicks* (2019) 40 Cal.App.5th 320, 329, review

11

granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.)  Defendant's *Dueñas* claim is without merit, invalidating his ineffective assistance of counsel claim on this issue.

### III.  DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, J.

I concur:

/S/

_____

HULL, Acting P. J.

12

MAURO, J., Concurring and Dissenting.

I fully concur in the majority opinion except for part II.C. of the Discussion, pertaining to defendant's challenge to the imposed fines and assessments, as to which I dissent.

In *People v. Dueñas* (2019) 30 Cal.App.5th 1157, the court held it is improper to impose certain fines or assessments without determining defendant's ability to pay. (*Id*. at pp. 1168, 1172.)  Although some courts have subsequently criticized *Dueñas*'s legal analysis (see, e.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted Nov. 26, 2019, S258946), *Dueñas* remains citable precedent.  Until the California Supreme Court has had an opportunity to resolve the current split in authority, I believe it is appropriate in certain cases to remand the matter to give the trial court an opportunity to consider defendant's ability to pay.

Here, defendant's October 2019 sentencing occurred after *Dueñas* was decided, but defendant's counsel did not raise an ability to pay challenge at the sentencing hearing. Accordingly, an ability to pay challenge is forfeited regarding the fines and assessments. Nevertheless, because defendant now asserts ineffective assistance of counsel, I would remand the matter and direct the trial court to assess defendant's ability to pay the fines and assessments.

/S/
_____
MAURO, J.

1