Filed 8/19/24  Santer v. Huff CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ANDREW SANTER et al.,<br><br>   Plaintiffs and Respondents.<br><br>v.<br><br>VICKI HUFF,<br><br>   Defendant and Appellant. | 2d Civ. No. B331044<br>(Super. Ct. No. 56-2022-00569081)<br>(Ventura County) |

Vicki Huff appeals a judgment awarding her $96,412 after a superior court trial de novo following an appeal by Andrew Santer (Santer) and Sondra Santer (Sondra) of a California Labor Commissioner decision in favor of Huff.[1]  (Lab. Code, § 98.2.)  The court found Huff was an employee and the Santers were her employers.  Huff contends the court erred by not awarding her compensation for all her working hours.  We conclude, among

---

[1] We refer to Sondra Santer by her first name, not from disrespect, but for clarity.

other things, that substantial evidence supports the judgment. We affirm.

FACTS

Santer's mother, Sondra, was an elderly woman living in her home in Leisure Village. Sondra needed assistance with shopping, meal preparation, and "light housework."

Santer posted an ad stating that he was searching for "a senior woman to share [L]eisure [V]illage home with current senior woman owner." The work would include "light housework as needed, all typically between 10 [a.m.] to 7 [p.m.]."

Huff responded, "I am a senior woman looking to share a home where I can assist." In a subsequent message, Huff said, "I work part time for a charity. My hours are very flexible."

Huff signed a "roommate agreement." It provided that she would pay "$0 rent" and "provide custodial support such as meals, transportation, wheelchair/walker escort, laundry, and assistance. This is not an Employment agreement and New Roomate [*sic*] is not an Employee."

Huff moved in and began providing services. She claimed Santer prohibited her from leaving the house for more than two hours on days other than Thursdays, Fridays, and Saturdays when she did charity work. Huff believed she was entitled to be paid wages.

Huff filed a claim with the California Labor Commissioner. A Labor Commissioner hearing officer ruled in favor of Huff and found the Santers owed Huff for unpaid regular wages, unpaid overtime, liquidated damages, interest, and waiting time penalties for a total award of $362,170.07.

The Santers filed an appeal to the superior court for a trial de novo. (Lab. Code, § 98.2.)

2.

Huff testified that she received an August 27, 2019 text message from Santer that stated, "I understand you were out Monday from 2 to 6. As we discussed, I wouldn't expect you'd be gone longer than 2 hours on your nonworking days . . . ." Huff said she understood this message to mean that "[she] wasn't to leave the house for more than two hours" other than on Thursdays, Fridays, and Saturdays when she did charity work.

Huff testified that on an evening in May 2019, Sondra told her that she had pain in her legs. Huff took her to the hospital and stayed with her. In January 2020, she assisted Sondra after she said she was not feeling well. Huff wanted to talk to Santer about being paid for her services, but he avoided her.

Santer testified he did not require Huff to be there "twenty-four hours a day, seven days a week." If his mother needed help at night, he expected Huff as a "roommate" could help her. But that was not part of Huff's work duties.

Sondra testified she did not require Huff to be with her "twenty-four hours a day, seven days a week." After dinner, Huff went to her room, "watched TV," and "attended to her business." Huff only assisted her "once or twice" at night.

The trial court found Huff was an employee and the Santers "were employers." Huff's working hours were 9:00 a.m. to 7:00 p.m. It rejected Huff's claim that she was required to work 24 hours, seven days a week, as an on-call employee. It found Huff was entitled "to an award of $96,412.00."

DISCUSSION

*Substantial Evidence*

Huff contends the trial court erred by finding she was not an employee on call 24 hours a day, seven days a week, and not on call during the nighttime hours after 7:00 p.m.

3.

We draw all reasonable inferences in support of the judgment. (*Barickman v. Mercury Casualty Co.* (2016) 2 Cal.App.5th 508, 516.) We do not weigh the evidence, resolve evidentiary conflicts, or decide the credibility of witnesses. (*Ibid.*)

Santer's ad specified that he needed services for meal preparation and light housework "between" 10:00 a.m. and 7:00 p.m. The trial court could reasonably infer the Santers were not seeking a 24-hour caregiver.

Huff cites to the text message Santer sent her on August 27, 2019. Santer stated, "I understand you were out Monday from 2 to 6. As we discussed, I wouldn't expect you'd be *gone longer than 2 hours on your nonworking days . . . .*" (Italics added.) Huff testified she understood the text message to mean that "[she] wasn't to leave the house for more than two hours" other than on Thursdays, Fridays, and Saturdays when she did charity work.

The trial court rejected her testimony: "Finding that an employment relationship existed does not extend to a finding that the job was 24/7. Huff's employment obligations generally stopped after dinner and the associated kitchen clean up. *After hours work* consisted of a call to Security if Sondra fell out of bed. Testimony established that such calls on an after hour basis were few. Based on this infrequency, the Court finds that these after hour calls were not part of the employment relationship, and did not operate to extend the hours of the working day, or amount to Huff being 'on call' during the nighttime hours." (Italics added.)

Huff notes the trial court mentioned "after hours work." She claims she was entitled to compensation for these hours as "standby" or "on call" time. In *Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 840, the court held, "It is

4.

well established that an employee's on-call or standby time may require compensation." But here the court found Huff was not required to be on a 24-hour standby.

Huff claims the phrase "after hours work" conflicts with the ultimate finding that she was not required to work after 7:00 p.m. But use of this phrase "may never be used to impeach the order or judgment." (*Burbank-Glendale-Pasadena Airport Authority v. Hensler* (1991) 233 Cal.App.3d 577, 591.) The judgment is what is relevant. (*Ibid.*) The judgment and ultimate finding stated that the "employment relationship" did not include working or being "on call" at night. The "after hours work" remark does not impeach the judgment. (*Ibid.*)

The trial court could also reasonably find Huff's interpretation of the August 27th text message was unreasonable. Santer objected to her taking off four hours during the hours between 2:00 p.m. and 6:00 p.m. He did not mention nighttime hours. He objected to her taking this time off during *normal working hours*.

Moreover, Santer testified he did not tell Huff "she had to be on duty, like a night watchman," to watch Sondra "all night," or to be there "twenty-four hours a day, seven days a week." He did not order that Huff was not allowed to be gone longer than two hours in a 24-hour period. His testimony was consistent with the ad he posted for the job which specified daytime working hours.

Huff said that after dinner she typically would go to her room, read, watch TV, communicate with her family, work on filling candy boxes, and go to bed. The trial court could reasonably infer these were "personal matters" that were not consistent with being a 24-hour on-duty employee. (*Brewer v.*

*Patel* (1993) 20 Cal.App.4th 1017, 1021; see also *Marez v. Lyft, Inc.* (2020) 48 Cal.App.5th 569, 578 ["courts have exempted 'purely personal' conduct from the scope of employment"].)

Huff notes that at times she helped Sondra at night and Santer testified he expected that she would help his mother at night if needed.  But Santer said he expected her to help as a "roommate" would.  He said he did not require her to supply those services as part of the employment agreement.  The trial court found the common courtesy of helping a roommate at night was not part of Huff's work assignment.

Sondra's testimony also supported the trial court's findings.  She testified that at night after dinner Huff went to her room, "watched TV," and "attended to her business."  She did not ask Huff to be with her "twenty-four hours a day, seven days a week."

The trial court found Huff's "customary daily hours of the job began with the preparation of breakfast at 9:00 a.m. and ended with the kitchen cleanup after dinner at 7:00 p.m."  Her "employment obligations generally stopped after dinner and the associated kitchen clean up."  These findings are supported by the evidence.

Huff testified that she helped Sondra at night because she frequently fell at night.  But Sondra testified Huff only assisted her "once or twice" at night.  The trial court resolved this conflict against Huff.  We do not decide the credibility of witnesses. (*Barickman v. Mercury Casualty Co.*, *supra*, 2 Cal.App.5th at p. 516.)  The court awarded Huff compensation for five hours for taking Sondra to the hospital one night, which the court found to be "a one time event."

*Other Issues*

Huff claims the trial court awarded her only six hours for her daily work on Thursdays, Fridays, and Saturdays, and seven hours for her daily work on Sundays for the period following March 2020. She claims it should have awarded her the regular 10 hours for the daily work on these days. She claims after March 2020 she changed and increased her working hours because she was no longer taking time off for charitable work for that period.

Huff raised this issue on a motion for new trial on damages which the trial court denied. Where a court denies a motion for new trial based on factual claims, the appellate court may presume the court implicitly found the factual basis for that motion was not true. (*People v. Ashford University, LLC* (2024) 100 Cal.App.5th 485, 535; *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1207; *Title Land Co. v. Schaefer* (1919) 41 Cal. App. 294, 295.)

Moreover, Huff introduced exhibit 13 at trial. The court found this was "her sheet of notes *memorializing the dates and times she was not working*." (Italics added.) At the bottom of that document, Huff wrote, "In addition to the above times off I typically took 4 hrs on Thurs, Fri & Sat for my charity work and 2 hrs on Sunday . . . ." But that document, which she asked the court to rely on, does not contain any reference to a March 2020 change of hours.

Huff faults the trial court for rejecting her testimony that after March 2020 she was working 10 hours each day. The trial court is the exclusive judge of the credibility of witnesses; it may find a witness's testimony was not credible, even if it was "uncontradicted." (*Jennifer K. v. Shane K.* (2020) 47 Cal.App.5th

558, 579; *Barickman v. Mercury Casualty Co.*, *supra*, 2 Cal.App.5th at p. 516.)

Moreover, there is evidence showing Huff did not work 10 hours a day. Sondra testified Huff's typical work schedule was: 1) prepare breakfast, which took 15 to 20 minutes to prepare and 15 minutes to clean up; 2) prepare lunch, which took 20 minutes to prepare and 10 minutes to clean up; and 3) prepare dinner, which took one hour to 90 minutes to prepare and three-quarter hour to clean up. When Huff was not preparing food, she was on her own time reading, watching TV, and doing other personal activities. A trier of fact could reasonably infer Huff was not working 10 hours a day during the period in question.

Huff took off hours during this period for grocery shopping, other shopping, and religious services. She did not specify, however, the hours she took off during this period. That left evidentiary gaps and unanswered questions for the trier of fact determining whether she met her burden of proof. (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 40.) For her time at Sondra's home, she could have provided documentation to show: 1) "time spent carrying out assigned duties" and 2) time on "personal matters." (*Brewer v. Patel*, *supra*, 20 Cal.App.4th at p. 1021.) The trial court could find she did not provide sufficient evidence to establish her specific daily hours to support her claim for additional hourly pay. Her testimony was not a substitute for more persuasive evidence that should have been presented on that issue. (Evid. Code, § 412; *Mattei v. Corporate Management Solutions, Inc.* (2020) 52 Cal.App.5th 116, 126, fn. 9; *Largey v. Intrastate Radiotelephone, Inc.* (1982) 136 Cal.App.3d 660, 672.)

We have reviewed Huff's remaining contentions and we conclude she has not shown grounds for reversal.

8.

DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to respondents.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


BALTODANO, J.


CODY, J.

Henry J. Walsh, Judge

Superior Court County of Ventura

_____

The Law Office of Louis H. Kreuzer II and Louis H. Kreuzer II for Defendant and Appellant.

Law Offices of David A. Esquibias and Christopher A. Fortunati for Plaintiffs and Respondents.