[No. B154169. Second Dist., Div. Two. Aug. 13, 2002.]

THE PEOPLE, Plaintiff and Appellant, v.
ROGELIO AYALA BERNAL, Defendant and Respondent.

**COUNSEL**

Steve Cooley, District Attorney, Patrick Moran and Jessica Goulden, Deputy District Attorneys, for Plaintiff and Appellant.

Barry P. King for Defendant and Respondent.

## OPINION

**NOTT, J.**—This appeal involves restitution for a victim of criminal conduct. In the central holding, we decide that the payment to a victim by a defendant's insurance carrier qualifies as a payment "directly from" that defendant, under Penal Code section 1202.4, subdivisions (a)(1) and (f)(2).

The People appeal from an order determining that respondent Rogelio Ayala Bernal had satisfied his restitution obligation to his victim, Tracy Russell. Appellant contends that (1) a release of liability given by Russell to respondent's insurance company as part of a settlement did not release respondent from his restitution obligation, (2) the trial court erred in offsetting the settlement proceeds against respondent's restitution obligation, and (3) the trial court abdicated its judicial function by deferring to the conclusion of the probation department that respondent's restitution obligation had been satisfied.

We reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to a plea agreement, respondent was convicted of driving under the influence of alcohol (Veh. Code, § 23153, subd. (a)) and causing great bodily injury (Pen. Code § 12022.7, subd. (a)).[1] In March of 2000, the trial court sentenced him to the high term of three years, plus three years for causing great bodily injury, suspended execution of sentence, and placed him on formal probation.

As conditions of probation, among others, respondent was required to spend 365 days in county jail while participating in a work furlough program and to "[m]ake restitution to victim pursuant to 1202.4(f) Penal Code, for current and future medicals in such manner as the probation officer shall prescribe."

In July 2001, respondent made a motion for an order determining that his restitution obligation had been satisfied because his insurance company "completed payment in full . . . to Tracy Russell $15,000 . . . ." The trial court continued the hearing for the "Probation Department to determine if full restitution has been made."

In August 2001, Michael Zazueta, respondent's probation officer, prepared a supplemental probation report in anticipation of the continued

---

[1] All subsequent statutory references are to the Penal Code unless otherwise indicated.

hearing. He noted that respondent had provided him with a letter from his insurance company stating that Russell had been paid $15,000. Zazueta confirmed the payment. Attached to the report was a printed "Statement of Loss" form, dated January 31, 2001, with supporting documentation in which Russell sought reimbursement for losses in the amount of $5,917.25, including $150.80 for a damaged shirt and shoes, $1,224.00 for X-rays and diagnosis at Tower Imaging Medical, $343.24 for the Los Angeles City Fire Department, and $4,200 for lost earnings. The loss form stated: "Please complete both sides of this sheet," but the reverse side was not included with the report. The report concluded: "It is probation's position that the victim is still entitled to the restitution requested. Thus, the probation officer would agree with defendant owing restitution in the amount of $5,970.25 above what his insurance has paid to this victim."

At the August 30, 2001 continued hearing, respondent challenged the supplemental probation report, arguing that the restitution order only required payment of future and existing medical bills, which the report reflected had been paid. The trial court indicated that it ordinarily ordered full restitution and that it believed, pursuant to the sentencing sheet, its order was to "make restitution to the victim pursuant to section 1202.4(b)/(f) of the Penal Code in such manner that the probation officer shall prescribe [as] there was no specific amount at the time of the sentencing." It nonetheless indicated that it would "be held to whatever is in the transcript." The district attorney requested a continuance of the hearing to determine if Russell had been paid in full and to permit the probation officer to attend and explain his report. The court continued the hearing until September 25, 2001, warning: "[I]f your probation officer doesn't show up next time and your witness doesn't show up, then I will at that time make restitution per civil for any balance."

Zazueta filed another report for the September hearing in which he stated: "In discussing [this] matter with supervisors in the adult centralized restitution unit, it appears that the defendant may be relieved of any restitution owed through probation if the victim signed any waiver forms from defendant's insurance. . . . If the defendant can provide the court with the signed financial responsibility form, probation can take off the restitution amount owed by defendant. Without such paperwork, the amount will stand."[2] Attached to Zazueta's September report was a memorandum from county counsel, citing *People v. Clifton* (1985) 172 Cal.App.3d 1165 [219 Cal.Rptr. 904] (*Clifton*), and concluding: "[I]n setting the amount of the restitution, the court should not consider the recovery rights of a third party (i.e.: an

---

[2]In the context presented, we interpret the probation report's reference to the "financial responsibility form" to mean the settlement release.

insurance company). It follows that the court cannot reduce the amount of the restitution for insurance paid or payable to a victim."

At the September 25, 2002 hearing, the prosecutor claimed restitution had not been fully paid. He reported that Russell had told him that a large portion of the insurance settlement was paid to her attorney, she had over $6,000 of emergency room medical bills outstanding, she had bills for back therapy, and she had not been paid for lost wages. The trial court stated: "[I]f we need a full hearing, we will have witnesses come in [to court] . . . ." The court concluded, however, that a full hearing was unnecessary because "we do have a release signed by her and it does have the defendant's name on it. [¶] . . . [¶] . . . I'm going to follow the probation's recommendation. If there is still outstanding restitution, she does have an attorney and it will become restitution per civil judgment. As far as probation, I'm going to make it informal probation and the defendant can come back here to show proof of completion of the SB38 program. So number one, probation is reduced to summary probation."

The district attorney then requested a hearing to determine the amount of attorney expenses incurred by Russell in obtaining the settlement with respondent's insurance carrier. The court declined to set a hearing because "this court is just not in a position to handle this as a civil case," adding that, "We did order restitution through probation."

DISCUSSION

I.  *The written release Russell gave respondent's insurance carrier does not bar restitution.*

Although the record is ambiguous, it appears that the trial court based its ruling that respondent had satisfied his restitution obligation on the probation report, which stated: "[T]he defendant may be relieved of any restitution owed through probation if the victim signed any waiver forms from defendant's insurance." The trial court received a release signed by Russell "with respondent's name on it."[3]

We agree with appellant's contention that the written release did not abrogate respondent's restitution obligation because (1) a release by a victim cannot waive the People's right to have a defendant pay restitution ordered as part of his sentence, (2) the victim would be in an untenable position if he or she had to reject a settlement offer from a defendant's insurance company that covers only a portion of the victim's losses in order to preserve the

---

[3]The release is not included in the record on appeal.

uncertain possibility that the full amount might be recovered from the defendant, and (3) *Clifton, supra,* 172 Cal.App.3d 1165 and *People v. Hove* (1999) 76 Cal.App.4th 1266 [91 Cal.Rptr.2d 128] (*Hove*) so indicate.

Article I, section 28, subdivision (b) of the California Constitution, states in part: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer. [¶] Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary."

Implementing legislation was passed and, at the time of respondent's crime, former section 1202.4 was effective.[4] That section mandated that a crime victim receive "full restitution" (§ 1202.4, subd. (f)) "directly from" the defendant (§ 1202.4, subd. (a)(1)) without regard to "the indemnification or subrogation rights of any third party" (§ 1202.4, subd. (f)(2)).

A restitution order has objectives beyond simply indemnifying the victim. It also seeks to rehabilitate the defendant and deter defendant and

---

[4]As in *People v. Birkett* (1999) 21 Cal.4th 226, 232, footnote 21 [87 Cal.Rptr.2d 205, 980 P.2d 912] (*Birkett*), we apply the restitution law in effect on the date of the crime, in this case October 9, 1999. All subsequent references to section 1202.4 are to that former section, unless otherwise indicated. The pertinent portions of that former section are: "(a)(1) It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime. [¶] . . . [¶] (f) In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in the amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. [¶] (1) The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution. The court may modify the amount, on its own motion or on the motion of the district attorney, the victim or victims, or the defendant. . . . [¶] (2) Determination of the amount of restitution ordered pursuant to this subdivision shall not be affected by the indemnification or subrogation rights of any third party. . . . [¶] (3) To the extent possible, the restitution order shall be prepared by the sentencing court, shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] (A) Full or partial payment for the value of stolen or damaged property . . . . [¶] (B) Medical expenses. [¶] (C) Wages or profits lost due to injury incurred by the victim . . . . [¶] (D) Wages or profits lost by the victim . . . due to time spent as a witness or in assisting the police or prosecution. [¶] . . . [¶] (G) Actual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim." (Stats. 1998, ch. 587, § 6.5.)

others. (*People v. Crow* (1993) 6 Cal.4th 952, 957 [26 Cal.Rptr.2d 1, 864 P.2d 80].) "Among other things, California's restitution law ensures that amends are made to society for a breach of the law, serves a rehabilitative purpose, and acts as a deterrent to future criminality. [Citations.] Restitution 'is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine.' [Citations.]" (*People v. Moser* (1996) 50 Cal.App.4th 130, 135-136 [57 Cal.Rptr.2d 647].)

■ While a settlement agreement with, and release of, a defendant's insurance company may reflect a victim's willingness to accept the amount paid in full satisfaction for all civil liability, it does not reflect the willingness of the People to accept that sum in satisfaction of the defendant's rehabilitative and deterrent debt to society. A restitution order pursuant to a defendant's plea is an agreement between the defendant and the state. (*People v. Pitts* (1990) 223 Cal.App.3d 606, 872 [273 Cal.Rptr. 757].) The victim is not party to the agreement, and a release by the victim cannot act to release a defendant from his financial debt to the state any more than it could terminate his prison sentence.

■ Furthermore, the amount ordered as restitution need not mirror what a victim might obtain in a civil action.[5] "There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action . . . ." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 [43 Cal.Rptr.2d

[5]For example, section 1202.4 does not, in most cases, permit restitution for emotional distress suffered (§ 1202.4, subd. (f)(3)(E)), although those damages are generally recoverable in a civil tort action. (*Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 893 [103 Cal.Rptr. 856, 500 P.2d 880] [mental suffering "frequently constitutes the principal element of tort damages"].) On the other hand, section 1202.4 allows for restitution of "[a]ctual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim" (§ 1202.4, subd. (f)(3)(G); see also *People v. Lyon* (1996) 49 Cal.App.4th 1521, 1524-1525 [57 Cal.Rptr.2d 415]), and "[w]ages and profits lost by the victim, . . . due to time spent as a witness or in assisting the police or prosecution" (§ 1202.4, subd. (f)(3)(D)), items not generally recoverable in a civil tort action. Moreover, current section 1202.4 has added several additional categories of economic losses which are subject to restitution and are *not generally recoverable in a civil action, and which would have* likely been recoverable under the former statute by virtue of its catchall requirement that the court award restitution for "every determined economic loss incurred as the result of the defendant's criminal conduct."

681, 899 P.2d 67].) Since the categories of loss recoverable by restitution and the dollar amounts ordered are not identical to the defendant's civil liability, there is no reason that a release of civil liability should release a restitution obligation, just as a satisfied restitution obligation does not bar a civil action for further damages. (See § 1202.4, subd. (j) ["Restitution collected pursuant to this subdivision shall be credited to any other judgments for the same losses obtained against the defendant arising out of the crime for which the defendant was convicted"].)

⬛ As appellant points out, even the statutory goal of fully reimbursing the victim's losses might be undermined if a civil settlement with a defendant's insurance carrier barred further restitution. A victim might rationally choose to accept an insurance settlement for substantially less than his or her losses rather than risk the uncertain, or even unlikely, possibility that the defendant will pay the entire restitution amount. If a settlement release automatically terminated a defendant's restitution obligation, the victim would lose all possibility of ever being made whole.

We find the reasoning in *Clifton, supra,* 172 Cal.App.3d 1165 compelling. There, the defendant was convicted of driving under the influence, causing great bodily injury. Before sentencing, the victim settled with the defendant's insurance carrier for $3,500 for the loss of his vehicle and $25,000 for partial payment for the rest of his damages. The victim continued to incur medical expenses. By the time of sentencing, those expenses exceeded $17,000 and were anticipated to continue. The trial court granted the defendant five years' probation on condition that he spend 60 days in jail and pay restitution of $6,000 to the victim by paying $100 a month to the victim's account at the treating hospital.

The defendant argued that the settlement with his insurance company deprived the trial court of authority to order restitution. The Court of Appeal held: "The fact that the victim may have settled with [the defendant's] insurance carrier prior to the sentencing hearing is irrelevant to the trial court's power to order restitution. [The defendant's] prior decision to purchase automobile insurance merely minimized [the defendant's] further financial liability, had the victim successfully pursued a civil action for damages. Moreover, while restitution collected pursuant to Penal Code section 1203.04 is to be credited, by the terms of the statute, to any civil judgment obtained by the victim, the statute does not conversely authorize credit from a civil settlement to the amount payable pursuant to a restitution order in a criminal case. The settlement, which may have released appellant and the insurance carrier from further civil liability, did not, in any event, constitute a civil 'judgment' as contemplated in section 1203.04. Just as a

restitution order pursuant to the criminal law is not a substitute for a civil action to recover damages [citation], a partial civil settlement is not a substitute for restitution in a criminal proceeding. Aside from compensating an individual for injuries suffered, restitution may also serve the salutary purposes of deterring future criminality and impressing upon a criminal offender that he must accept responsibility for his crime. [Citations.]" (*Clifton, supra*, 172 Cal.App.3d at p. 1168.)

We conclude that Russell's written release of respondent and his insurance company did not bar respondent's restitution obligation. Because the trial court's determination that respondent had satisfied this obligation was premised on the mistaken legal conclusion that the release barred further restitution, it failed to exercise its discretion, as it must do. (*People v. Draut* (1999) 73 Cal.App.4th 577, 581 [86 Cal.Rptr.2d 469].) This matter must therefore be reversed and remanded.

II. *On remand, the trial court must hold a hearing to determine the appropriate amount of restitution due, if any, to the victim.*

As previously noted, the trial court did not set a specific restitution amount at respondent's sentencing hearing but stated on the record that respondent would be required to reimburse Russell for present and future medical expenses. The court referred the issue of the amount of the restitution to the probation department, as the court was authorized to do. (See § 1202.4, subd. (f) ["[i]f the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined *at the direction of the court*" (italics added)]; see also *People v. Lunsford* (1998) 67 Cal.App.4th 901, 903 [79 Cal.Rptr.2d 363].)

Although the trial court could properly refer the restitution determination to the probation department, the parties were entitled to a court review of that department's determination, in accordance with section 1202.4, subdivision (f)(1). As a result of the trial court's erroneous belief that the settlement release barred further restitution as a matter of law, the parties did not receive such a hearing. ▇▇▇▇ In light of our holding, on remand a hearing is required for the court to determine the amount of restitution that is appropriate and the amount that remains to be paid.[6] ▇ We note that victim restitution is mandated by both the Constitution and section 1202.4,

---

[6]We reject respondent's contention that appellant waived the issue of the amount of restitution respondent owed by failing to request a continuance to present evidence of Russell's losses or to move to modify the probation department's determination. The trial court said it would provide a "full hearing" if necessary, but did not do so in the erroneous belief that Russell's written release of respondent and his insurance company made a hearing unnecessary. In light of the trial court's ruling, any request for a hearing by the prosecution

and a sentence imposed without such an award is invalid. (*People v. Rowland* (1997) 51 Cal.App.4th 1745, 1751 [60 Cal.Rptr.2d 351].) Section 1202.4 requires "full restitution." An order providing less is similarly invalid. (*Ibid.*)

III.  *The trial court must offset against respondent's restitution obligation monies paid to Russell by respondent's insurance carrier for losses subject to the restitution order.*

Because we conclude that Russell's written release of respondent and his insurance company did not bar restitution, on remand the trial court must consider the impact of the insurance payments on respondent's restitution obligation. Appellant argues that "[t]he trial court's decision permitting money paid to the victim by an insurance company to offset [respondent's] obligation to pay restitution rested upon a demonstrable error of law. . . . [T]hat whatever money a victim receives from a third party does not in any way serve to offset a defendant's duty to pay restitution." Appellant characterizes respondent's insurance company as just another "third party," and points to the statutory directives that the victim "receive restitution *directly* from any defendant convicted of that crime." (§ 1202.4, subd. (a)(1), italics added.) Appellant also contends that the restitution amount is not to be affected by "indemnification or subrogation rights of any third party." (§ 1202.4, subd. (f).) Appellant further urges that the rehabilitative and deterrent purposes of restitution would be thwarted if payments by a defendant's insurance company offset the defendant's restitution obligation.

Appellant has cited no case holding that payments by a defendant's insurer cannot offset the defendant's restitution obligation. Rather, appellant relies heavily on the Supreme Court opinion in *Birkett, supra,* 21 Cal.4th at page 246, wherein the court stated, regarding section 1202.4: "[T]he Legislature intended to require a probationary offender, for rehabilitative and deterrent purposes, to make full restitution for all 'losses' his crime had

---

would have been a useless act. In any event, the prosecutor did request a hearing to determine the amount of attorney fees Russell incurred to obtain the settlement, which request was denied by the court.

The record generated below was unclear as to the proper amount of respondent's restitution obligation. The Statement of Loss, attached to the August probation report, referred to a reverse side that was not included. The invoices supporting the Statement of Loss contained only medical billing for the initial diagnosis and X-rays which appears inconsistent with the initial probation report which indicated that Russell suffered eight fractured ribs, a broken leg and lacerations, resulting in hospitalization for two weeks. Further, there was no documentation establishing the amount of attorney fees Russell incurred in obtaining settlement with respondent's insurance company. The probation reports contained numerous inconsistencies making it difficult, if not impossible, to determine precisely what respondent's restitution obligation was. The prosecutor indicated at the hearing that Russell claimed additional losses beyond those stated in the probation reports.

caused, and that such reparation should go entirely to the individual or entity the offender had directly wronged, regardless of that victim's reimbursement from other sources."[7] (Italics omitted.) *Birkett* continued: "[T]he Legislature could rationally conclude that the criminal restitution scheme should always require the offender to pay the full cost of his crime, receiving no windfall from the fortuity that the victim was otherwise reimbursed . . . ." (*Birkett, supra,* 21 Cal.4th at p. 246.)

*Birkett* was considering an entirely different issue than that presented here. The issue in *Birkett* was whether a court had authority to order restitution to be paid directly to the *victims'* insurance companies that had reimbursed the victims. It is inapplicable to these facts because *Birkett* involved reimbursement of victims' losses by *their own* insurance carriers, not by the defendant's insurance carrier. *Birkett*'s above stated comments must be thus understood in that context; its reference to "other sources" refers to the *victims'* insurance companies. (*Birkett, supra,* 21 Cal.4th at p. 246.)

Appellant also relies on *Hove, supra,* 76 Cal.App.4th 1266. There, the trial court ordered the defendant to pay full restitution of the victim's more than $286,000 of medical bills even though the victim suffered no monetary loss from the defendant's conduct because all of his medical expenses were paid by Medicare and Medi-Cal. The Court of Appeal affirmed the trial court because "the fortuity that the victim here was over age 65, and thus covered by Medicare, should not shield defendant from a restitution order which requires him to pay the full amount of the losses caused by his crime." (*Id.* at p. 1272.) Therefore, *Hove* also did not involve reimbursement of the victim by a defendant's insurance company.

In both *Birkett* and *Hove,* the sources of the victims' reimbursement were completely distinct and independent from the defendants. The payments from such sources were simply fortuitous events from which the defendants should not benefit. Moreover, the payments by the victims' insurer, in *Birkett,* and Medi-Cal, in *Hove,* were subject to claims for reimbursement; in *Hove,* they were subject to a Medi-Cal reimbursement claim (*Hove, supra,* 76 Cal.App.4th at p. 1272, fn. 5) and in *Birkett,* the victims' insurers had subrogation rights. (16 Couch, Insurance (2d ed. 1983) § 61.18, p. 93 ["Stated simply, subrogation is a creature of equity having for its purpose the working out of an equitable adjustment between the parties for securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it"]; see also *Offer v. Superior Court* (1924) 194 Cal. 114 [228 P. 11] [subrogation has its origin in general principles of equity and

---

[7]The version of the restitution statute effective at the time of respondent's crime was not limited to probationary offenders.

in the nature of the insurance contract as one of indemnity].) As a result of these reimbursement claims, equitable principles would tend to place the loss on the wrongdoing defendant, preclude a windfall recovery by the victim, and reimburse the third party.[8]

Here, because respondent's insurance company made payments to the victim on his behalf pursuant to its contractual obligation to do so, the carrier would have no recourse against respondent. (*Truck Ins. Exchange v. County of Los Angeles* (2002) 95 Cal.App.4th 13, 21 [95 Cal.App.4th 890c, 115 Cal.Rptr.2d 179] ["An insurer has no right of equitable subrogation against its own insured with respect to a loss or liability for which the insured is covered under the policy"]; see also *National Technical Systems v. Superior Court* (2002) 97 Cal.App.4th 415, 427 [118 Cal.Rptr.2d 465] [insurer has no right of indemnification against its insured].) If respondent paid his entire restitution obligation with no credit for the defendant's insurance payment, the victim would receive a windfall to the extent that such payments duplicated items already reimbursed by respondent's carrier.

The only reported case involving payments to a crime victim *by the wrongdoer's* insurance carrier is *Clifton, supra,* 172 Cal.App.3d 1165. But *Clifton* dealt with the question of whether the trial court had statutory *authority* to order restitution after the victim settled with and released the defendant's insurance company. It held that a settlement of $28,500 "[was] irrelevant to the trial court's power to order restitution." (*Id.* at p. 1168.) *Clifton* was not specifically concerned with whether any portion of the prior settlement would offset the subsequently entered restitution order. Although *Clifton* contains language suggesting that there should be no offset,[9] that language was mere dictum.

While section 1202.4 mandates that the victim receive payments "directly from the defendant" (§ 1202.4, subd. (a)(1)), neither its language nor its legislative history clarifies what is meant by that phrase. We conclude that it

---

[8] "[W]hen the insurer has made payment for the loss caused by a third party, it is only equitable and just that the insurer should be reimbursed for his payment to the insured, because otherwise either the insured would be unjustly enriched by virtue of a recovery from both the insurer and the third party, or in the absence of such double recovery by the insured, the third party would go free notwithstanding the fact that he has a legal obligation in connection with the damage." (16 Couch, Insurance, *supra,* § 61.18, pp. 93-94.)

[9] *Clifton* stated: "[The defendant's] prior decision to purchase automobile insurance merely minimized [the defendant's] further financial liability, had the victim successfully pursued a civil action for damages," implying that the insurance did not minimize financial liability for restitution (*Clifton, supra,* 172 Cal.App.3d at p. 1168), and "the statute does not conversely authorize credit from a civil settlement to the amount payable pursuant to a restitution order in a criminal case." (*Ibid.*)

includes payments by an insurance company insuring the defendant. The defendant's own insurance company is different than other sources of victim reimbursement, in that (1) the defendant procured the insurance, and unlike the other third party sources, its payments to the victim are not fortuitous but precisely what the defendant bargained for; (2) the defendant paid premiums to maintain the policy in force; (3) the defendant has a contractual right to have the payments made by his insurance company to the victim, on his behalf; and (4) the defendant's insurance company has no right of indemnity or subrogation against the defendant. In sum, the relationship between the defendant and its insurer is that payments by the insurer to the victim are "directly from the defendant."

Appellant claims that if respondent can offset payments made by his insurance company against his restitution obligation, the restitution law's rehabilitative and deterrent objectives will be lost. Although some authorities have speculated that restitution "is imposed *primarily* for the benefit of the state to promote the state's interests in rehabilitation and punishment" (*People v. Moser, supra,* 50 Cal.App.4th at p. 135, italics added), we question the accuracy of such a characterization. First, the legislative intent, as stated in section 1202.4, subdivision (a)(1), is that the victim be made whole. Second, restitution of the victim is only ordered if the victim suffers economic loss. Without such loss, there is no restitution despite the fact that the goals of rehabilitation and deterrence are thereby frustrated. Third, section 1202.4, subdivision (b), provides for a substantial "restitution fine" of $200 to $10,000, wholly apart from victim restitution, which serves punitive and deterrent goals of restitution. These factors suggest that the primary purpose of victim restitution is to fully reimburse the victim, which purpose is not undermined by permitting an offset for payments by the defendant's insurance carrier.

We therefore conclude that settlement payments made to Russell by respondent's insurance carrier must be an offset to respondent's restitution obligation to the extent that those payments are for items of loss included in the restitution order.

### DISPOSITION

The order modifying restitution is reversed and the matter is remanded for the trial court to determine respondent's remaining restitution obligation in

accordance with the principles announced in this decision, and to reconsider the propriety of its grant of summary probation in light of its determination.

Boren, J., and Doi Todd, J., concurred.