Filed 10/13/21  P. v. Potter CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E076237 |
| v. | (Super.Ct.No. FSB18000378) |
| RYAN POTTER, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Dwight W. Moore, Judge.  Reversed.

Rob Bonta, Attorney General, Matthew Rodriquez, Acting Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Appellant.

Brown & Stedman and Edwin B. Brown for Defendant and Respondent.

## FACTUAL AND PROCEDURAL HISTORY

On January 29, 2018, the California Attorney General filed a felony complaint against defendant and respondent Ryan Potter and codefendant Steven Korff (codefendant). The complaint charged defendant and codefendant with one count of conspiracy under Penal Code[1] section 182, subdivision (a)(1), 126 counts of forgery under section 471, and 75 counts of grand theft under section 487, subdivision (a). The complaint also alleged that defendant and codefendant took in excess of $3,200,000 under section 12022.6, subdivision (a)(4)(b); engaged in a pattern of felony conduct involving the taking of more than $500,000 under section 186.11, subdivision (a)(2); and were presumptively ineligible for probation because they took more than $100,000 under section 1203.045.

On March 12, 2018, defendant pled not guilty and denied the special allegations.

On June 22, 2018, pursuant to a plea agreement, defendant pled guilty to 13 counts of grand theft with a *Harvey* waiver[2] on restitution, in exchange for the dismissal of the remaining counts and a stipulated sentence of 10 years in prison wherein he would serve six years in custody with halftime credits and the remainder on supervision.

After defendant's guilty plea, the court dismissed the remaining counts pursuant to the terms of the plea agreement. The court then sentenced defendant to a total term of 10 years in prison: the middle term of two years in county prison on count 6, plus eight

---

[1]  All further statutory references are to the Penal Code unless otherwise specified.

[2]  *People v. Harvey* (1979) 25 Cal.3d 755.

months consecutive (one-third the middle term) on each of the remaining 12 counts of grand theft. The court ordered defendant to serve six years in county prison, with the remaining four years on mandatory supervision. The court also ordered 242 days of credit.

On November 8, 2019, the trial court set the matter for a restitution hearing on February 21, 2020. On the day of the hearing, the People filed a memorandum of restitution, which included an audit for the full amount of restitution owed by defendant reduced by the money defendant had already paid to the victim, defendant's former employer, Squires Lumber Company (Squires), pursuant to a civil settlement reached years prior. On May 29, 2020, defendant filed an opposition to the motion. In the opposition, defendant conceded that he and codefendant stole $5,788,517.84 from Squires. Defendant, however, argued that Squires waived its right to collect additional restitution beyond what it had already collected in connection with its civil settlement with defendant.

At the restitution hearing on October 30, 2020, the trial court ordered defendant to pay $450,835.61 in restitution to the victim—the amount defendant had previously paid to the victim via the civil settlement. The court noted that "the amount appears to have been paid in full."

On December 8, 2020, the People filed a timely notice of appeal.

**DISCUSSION**

A.   THE TRIAL COURT ERRED IN IMPOSING THE RESTITUTION

ORDER IN THE AMOUNT OF THE SETTLEMENT REACHED IN THE

CIVIL ACTION

On appeal, the People contend that "the trial court abused its discretion when it imposed restitution in the amount [defendant] had previously paid Squires to settle their civil action and not in the amount that [defendant] actually embezzled from Squires."

1.   *PROCEDURAL BACKGROUND*

In the People's memorandum on restitution, the People requested $6,300,828.28 in restitution to repay the money stolen by defendant from Squires.  The total represented the amount embezzled by defendant, $5,788,517.84, plus interest calculated from the date of sentencing to the date of filing of the memorandum.  Relying on *People v. Bernal* (2002) 101 Cal.App.4th 155 (*Bernal*), the People argued that "a partial civil settlement is not a substitute for restitution in a criminal proceeding," and that "a release by a victim cannot waive the People's right to have a defendant pay restitution ordered as part of his sentence."

In his opposition, defendant did not contest that he had embezzled $5,788,517.84 from Squires.  However, defendant argued that Squires had waived collecting additional restitution beyond what had already been paid in connection with the civil settlement. Defendant attached the civil settlement agreement as an attachment.  The settlement agreement was executed in June 2015 wherein defendant agreed to provide Squires with certain assets to resolve Squire's civil suit against defendant.  As part of the settlement,

4

Squires agreed to "not request criminal restitution on any case that may be filed in the future against Potter, but will accept any restitution that is provided. In the event criminal restitution is ordered, Squires agrees to consider the sums paid under this Agreement to be an offset in relation to any criminal restitution judgment."

Ultimately, defendant paid Squires $450,835.61 in connection with his civil settlement with Squires. In defendant's opposition to the restitution memorandum in this case, defendant argued that the civil settlement amounted to a knowing and intelligent waiver of Squires's right to collect additional restitution against defendant in a subsequent criminal case.

At the hearing on February 21, 2020, the trial court stated, "Now, in that settlement it is represented to me the settlement purports to waive the right of the victim in this case, Squires Lumber, to any restitution above and beyond that settlement that was a little over $450,000." The court then asked whether it was the position of defendant "that restitution has been satisfied," defense counsel stated: "Correct. The total restitution would be the amount that's already been paid."

Thereafter, the court stated, "And the People's position is that civil settlement, although an offset to the total amount of restitution, is only that, an offset. The remaining balance, which is the $6.3 million figure—that remaining balance remains due and owing. And the only issue before this Court at this time is to address the legal issue as to whether that civil settlement in which Squires, the victim, purported to waive their right to any further restitution, in fact, controls, or does he still owe the full amount less the offset?" The parties then stipulated that (1) the $450,835.61 pursuant to the civil

5

settlement had been paid in full; (2) "the total amount of restitution less that offset would be the 6.3 million figure"; and (3) there were no factual or evidentiary issues. "We have solely is it paid or is it still owed as an issue?" The court then continued the hearing.

At the continued hearing on October 30, 2020, the court heard arguments from defense counsel and the prosecutor regarding the effect of the civil settlement on the restitution order. The court then went on to discuss the facts in this case and two cases, *People v. Gross* (2015) 238 Cal.App.4th 1313 and *Bernal*, *supra*, 101 Cal.App.4th 155, and then concluded as follows:

"In this case, the victim having been victimized to a huge extent—this is certainly the biggest embezzlement I have seen in my career—is scrambling. As [the prosecutor] points out, [defendant] will say anything and do anything to get his hands on some money. Yeah. Probably true. 'But my client would sign anything to get out of doing a long sentence' has never been the basis of setting aside that sentence. I mean, people make decisions. And there are consequences to those decisions. [¶] Yes, the victim said 'Give me the $450,000. I will take it.' Okay. He also agreed not to seek further restitution from the defendant. I would think the factual circumstances in *Bernal* and *Gross* are factually distinguishable from what we have here. We have a victim and a defendant who were directly dealing with each other, not with some other statute. Does this have that effect or not which was the issue in *Gross*, not a settlement with an insurance company? But this is a direct—and as counsel pointed out in the brief and attorneys pointed out on both sides—a direct resolution of the case. [¶] Under these circumstances—and I've been wrong before. I will be wrong again. And I don't get

6

offended when people take my decisions up. But it appears to me that what [the prosecutor] is suggesting as the state of the law, I think, is an overbroad reading of the cases and the statutes that he's cited."

### 2. *LEGAL BACKGROUND*

Victims of crime in California have a constitutional and statutory right to receive full restitution directly from a defendant for economic loss suffered as a result of the defendant's criminal conduct. (Cal. Const., art. I, § 28, subd. (b); § 1202.4, subd. (f); *People v. Hamilton* (2003) 114 Cal.App.4th 932, 939.) Section 1202.4 provides: "[I]n every case in which a victim has suffered *economic loss* as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim . . . in an amount established by court order, based on the amount of loss claimed by the victim . . . ." The court shall order full restitution "unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." (*Id.* at subds. (b) & (f), italics added.) Section 1202.4, subdivision (f)(3) directs that the restitution ordered "shall be of a dollar amount that is sufficient to fully reimburse the victim . . . for every determined *economic loss* incurred as the result of the defendant's criminal conduct." (Italics added.)

A restitution order is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious. No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered. (*People v. Smalling* (2019) 36 Cal.App.5th Supp. 1, 4.) However, where a restitution order rests upon a " 'demonstrable error of law,' " abuse of discretion appears. (*Id.* at p. 4.) In other words,

7

" 'if the trial court misunderstands or misapplies the applicable legal standard, it has not properly exercised its discretion.' " (*Id*. at p. 5.) Therefore, " 'an appellate court's consideration of a claim that a trial court abused its discretion in awarding [or denying] restitution because the lower court applied an incorrect legal standard is tantamount to independent or de novo review.' " (*Ibid.*)

3.     *THE CIVIL AGREEMENT DID NOT BAR DEFENDANT'S RESTITUTION OBLIGATION IN THE FULL AMOUNT HE EMBEZZLED*

In this case, the trial court imposed restitution in the amount defendant had already paid Squires in connection with its civil settlement agreement. The court concluded that Squires had waived its right to further restitution from defendant.

In determining whether the settlement and release precluded restitution as a condition of probation in the criminal action, we find guidance in *Bernal*, *supra*, 101 Cal.App.4th 155. In *Bernal,* the defendant pled guilty to driving under the influence and causing great bodily injury. The trial court declined to order restitution to the victim because the defendant's insurance company had paid the victim for her losses, she had signed a waiver and release of all claims, and the waiver and release specifically listed the defendant. (*Id.* at pp. 158-161.)

On appeal, the court held that the victim's settlement and release did not abrogate the defendant's restitution obligation. (*Bernal*, *supra*, 101 Cal.App.4th at pp. 160-161, 164.) The court noted that under both the state constitution and section 1202.4, the victims of crimes had a right to restitution, and the court was required to order those

8

defendants convicted of crimes to pay restitution for losses suffered by victims regardless of the indemnification or subrogation rights of third parties. (*Bernal*, at p. 161 & fn. 4; see Cal. Const., art. I, § 28, subd. (b); § 1202.4, subds. (a)(1) & (f).)

The court further noted that "[a] restitution order has objectives beyond simply indemnifying the victim. It also seeks to rehabilitate the defendant and deter defendant and others. [Citation.] 'Among other things, California's restitution law ensures that amends are made to society for a breach of the law, serves a rehabilitative purpose, and acts as a deterrent to future criminality. [Citations.] Restitution "is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine." ' " (*Bernal*, *supra*, 101 Cal.App.4th at pp. 161-162.)

The court reasoned that "a release by a victim cannot waive the People's right to have a defendant pay restitution ordered as part of his sentence." (*Bernal*, *supra*, 101 Cal.App.4th at p. 160.) "While a settlement agreement with, and release of, a defendant's insurance company may reflect a victim's willingness to accept the amount paid in full satisfaction for all civil liability, it does not reflect the willingness of the People to accept that sum in satisfaction of the defendant's rehabilitative and deterrent debt to society. A restitution order pursuant to a defendant's plea is an agreement between the defendant and the state. [Citation.] The victim is not party to the agreement, and a release by the

9

victim cannot act to release a defendant from his financial debt to the state any more than it could terminate his prison sentence." (*Id.* at p. 162.)

The court also explained that a restitution order "need not mirror what a victim might obtain in a civil action. 'There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action . . . .' [Citation.] Since the categories of loss recoverable by restitution and the dollar amounts ordered are not identical to the defendant's civil liability, there is no reason that a release of civil liability should release a restitution obligation, just as a satisfied restitution obligation does not bar a civil action for further damages." (*Bernal*, *supra*, 101 Cal.App.4th at pp. 162-163, fn. omitted.) Furthermore, "even the statutory goal of fully reimbursing the victim's losses might be undermined if a civil settlement with a defendant's insurance carrier barred further restitution. A victim might rationally choose to accept an insurance settlement for substantially less than his or her losses rather than risk the uncertain, or even unlikely, possibility that the defendant will pay the entire restitution amount. If a settlement release automatically terminated a defendant's restitution obligation, the victim would lose all possibility of ever being made whole." (*Id.*, at p. 163.)

The court found support for its analysis in *People v. Clifton* (1985) 172 Cal.App.3d 1165. There, the victim of defendant's offense settled with an insurance carrier for partial payment of losses, damages, and medical expenses. On appeal, the court found the settlement irrelevant concerning whether the trial court had power to

order restitution. The court explained that "[j]ust as a restitution order pursuant to the criminal law is not a substitute for a civil action to recover damages [citation], a partial civil settlement is not a substitute for restitution in a criminal proceeding. Aside from compensating an individual for injuries suffered, restitution may also serve the salutary purposes of deterring future criminality and impressing upon a criminal offender that he must accept responsibility for his crime." (*Id.* at p. 1168.)

We find *Bernal* persuasive and applicable and conclude that the settlement here did not bar restitution.

Defendant contends that that *Bernal* is inapplicable. Defendant notes that in *Bernal*, the victim settled with the defendant's insurance company; but in this case, defendant settled directly with Squires. The fact that the victim settled directly with defendant, rather than an insurance company, is a difference without a legal distinction. The person or entity with whom a criminal victim settles is irrelevant because, as *Bernal* explains, a victim has no authority to extinguish a criminal defendant's obligation *to the state* to pay restitution as a condition of probation or waive the state's right to order restitution in order to achieve the goals of restitution and probation.

Moreover, defendant contends that "Squires specifically waived its right to receive any restitution from the criminal court case against [defendant]." (Underscore omitted.) Defendant mischaracterizes the terms of the civil settlement agreement, which provides:

"F. Squires *will not request* criminal restitution in any case that may be filed in the future against [defendant], but *will accept* any restitution that is provided. In the event criminal restitution is ordered, Squires agrees to consider the sums paid under this

11

Agreement to be an offset in relation to any criminal restitution judgment." (Italics added.)

Therefore, according to the civil settlement agreement, Squires did *not* waive its right to receive future restitution from defendant. Squires only agreed that it would not *request* additional restitution against defendant. In the agreement, Squires agreed to accept any restitution, if ordered by the court. The civil settlement agreement expressly contemplated the possibility that the People would seek additional restitution in a future criminal case, and provided that any sums paid by defendant in connection with the civil agreement would offset the criminal restitution judgment. Furthermore, we note that the parties could not waive the right of the state, a nonparty to the civil agreement, to seek restitution on behalf of the victim. As noted above, even if Squires had waived any additional restitution, a crime victim is not a party to a restitution order, and "a release by the victim cannot act to release a defendant from his financial debt to the state any more than it could terminate his prison sentence." (*Bernal*, *supra*, 101 Cal.App.4th at p. 162.) "A restitution order has objectives beyond simply indemnifying the victim. It also seeks to rehabilitate the defendant and deter defendant and others. [Citation.] 'Among other things, California's restitution law ensures that amends are made to society for a breach of the law, serves a rehabilitative purpose, and acts as a deterrent to future criminality.' " (*Id.* at pp. 161-162.)

Based on the above, we will remand for the trial court to amend its restitution order. Here, the parties have agreed that the total amount of restitution owed was $6,300,827.27. Therefore, the trial court shall order restitution in the amount of

12

$6,300,827.27, offset by the $450,835.61 that defendant already paid Squires pursuant to the civil settlement agreement—$5,849,991.66.

## DISPOSITION

The October 30, 2020, restitution order is reversed and the matter is remanded to the trial court with directions to enter a new restitution order in the amount of $5,849,991.66.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

Acting P. J.

We concur:

FIELDS

J.

RAPHAEL

J.

13