138 Nev., Advance Opinion 30

IN THE SUPREME COURT OF THE STATE OF NEVADA

TYLER CHASE NIED,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 78147

FILED

MAY 05 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a guilty plea, of reckless driving resulting in substantial bodily harm. Second Judicial District Court, Washoe County; Barry L. Breslow, Judge.

*Affirmed in part, vacated in part, and remanded.*

Viloria, Oliphant, Oster & Aman L.L.P. and Thomas E. Viloria, Reno, for Appellant.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Kevin P. Naughton, Deputy District Attorney, Washoe County, for Respondent.

_____

BEFORE THE SUPREME COURT, SILVER, CADISH, and PICKERING, JJ.

*OPINION*

By the Court, SILVER, J.:

This appeal concerns the imposition of restitution at sentencing. Appellant Tyler Nied argues that the evidence presented at the

22-14315

sentencing hearing did not support the restitution amount of $463,825.59. He also challenges the calculation of restitution for the victim's medical costs and argues that his restitution obligation must be offset by the settlement amount that his insurer paid to the victim. We conclude the restitution awarded was not supported by competent evidence; thus, we vacate the restitution portion of the judgment of conviction and remand the case to the district court for further restitution proceedings. Further, in resolving Nied's arguments regarding the proper calculation of restitution, we stress that restitution is intended to compensate the victim for costs and losses caused by the defendant. Thus, restitution for a victim's medical costs is limited to the amount that the medical provider accepts as payment in full rather than the amount initially billed by the medical provider. And a defendant's restitution obligation must be offset by any amount the defendant's insurer paid to the victim.

## FACTS AND PROCEDURAL HISTORY

Nied drove a car at high speed through downtown Reno, eluding police, running red lights, and driving down a street in the wrong direction, before crashing into the victim's car, seriously injuring the victim. Nied pleaded guilty to reckless driving resulting in substantial bodily harm and agreed to pay restitution.

Shortly before sentencing, the Division of Parole and Probation provided Nied and the district court with a presentence investigation report and a victim impact letter written by the victim's mother. The victim impact letter stated that, because of the crash, the victim had been transported to a hospital, where he remained in a coma for a week. His injuries, which included a broken pelvis, a brain bleed, and face and head

SUPREME COURT
OF
NEVADA

(O) 1947A

trauma, required two months of treatment in the hospital followed by approximately six weeks of treatment in a rehabilitation facility. He had lasting physical impairment and brain damage, was still being treated for his injuries, and was unable to resume his previous job. Due to his injuries, he became depressed and attempted to commit suicide exactly one year after the car accident, resulting in his hospitalization and treatment at a behavioral center. According to the letter, the victim's medical costs before the suicide attempt amounted to around $600,000.

The presentence report recommended that Nied be ordered to pay restitution in the amount of $459,147.26 for the victim's medical costs plus $4,678.33 for the damage to his vehicle. The report included a one-page "Medical Bills Summary" listing the total amount billed by each of the victim's medical providers, but it did not include any other documentation, such as bills or receipts. Nied filed an objection to the presentence report's recommended restitution amount, arguing that no documentation supported it and that it was improperly calculated.

At the sentencing hearing, the victim's mother produced printouts that she had received from the victim's health insurance provider showing his medical claims from June 2017 to September 2018. She also provided a spreadsheet she had created that contained a summary of the total medical costs and the victim's out-of-pocket costs. This spreadsheet stated that the victim's insurance was billed a total of $277,503.43 for the hospitalization costs incurred from the accident and from his subsequent suicide attempt. Out of that amount, the victim's insurance paid $87,242.79, his out-of-pocket costs were $6,052.87, and the rest was written off by the medical providers. The document also showed that the victim

SUPREME COURT
OF
NEVADA

(O) 1947A

received Nied's automobile policy limit of $50,000 from his automobile insurance provider, 33 percent of which went to attorney fees.

The district court ordered Nied to pay $463,825.59 in restitution and sentenced him to 30 days in jail and 5 years of probation. Nied objected to the restitution amount, and this appeal followed. Nied challenges only the restitution portion of the judgment of conviction.

## DISCUSSION

Nied argues that the restitution award is not based on reliable and accurate information, as neither the testimony nor the documentation at the sentencing hearing supported the restitution amount awarded by the district court. He further argues that the restitution for medical costs should not have included the costs arising from the victim's suicide attempt, the costs paid by the victim's insurance provider, or the amounts initially billed by the medical providers but not actually charged. Finally, he contends that the restitution amount must be offset by the payments Nied's automobile insurer made to the victim.

*Sufficiency of evidence*

NRS 176.033(3) authorizes a sentencing judge to "set an amount of restitution for each victim of the offense" if restitution is "appropriate." A sentencing judge generally has wide discretion when ordering restitution pursuant to NRS 176.033(3) but must use "reliable and accurate information" in calculating a restitution award. *Martinez v. State*, 115 Nev. 9, 12-13, 974 P.2d 133, 135 (1999). Because restitution is a sentencing determination, this court will not overturn it absent an abuse of discretion. *Id.*

 

Here, at the sentencing hearing, the victim presented testimony and documents regarding his medical costs, including printouts from his insurance provider of the medical claims and a spreadsheet summarizing those claims. In arriving at the restitution amount of $463,825.59, the district court appears to have relied on the presentence report's computation of $459,147.26 for the victim's medical costs and $4,678.33 for his vehicle damage. Nied objected to this amount because it was not supported by competent evidence substantiating the $459,147.26 in medical costs alleged in the presentence report.[1]

Because Nied challenged the restitution amount for the victim's medical costs that the Division of Parole and Probation recommended in the presentence report, the State was required to present evidence at sentencing to prove the amount of restitution. *See id.* at 13, 974 P.2d at 135; 6 Wayne R. LaFave et al., *Criminal Procedure* § 26.6(c) (4th ed. 2021) ("It is up to the prosecutor to prove the amount of loss."). And where, as here, the evidence at sentencing does not support the amount of costs stated in the presentence report, we conclude the district court abuses its discretion in relying on that amount to calculate restitution. Although it is clear from the record that the victim suffered serious and extensive injuries

---

[1]In fact, the spreadsheet summary, which the victim's mother prepared, showed a total amount of $277,503.43 billed by the medical providers, and $92,870.66 paid by the victim and his insurer. The victim's mother further testified that her summary of the medical bills accurately reflected all the medical costs incurred since the accident, though she appeared to offer contradictory testimony that the $459,147.26 amount in the presentence report accurately reflected the medical costs incurred after the accident but before the victim's suicide attempt.

that resulted in significant medical costs, we must vacate the district court's award of restitution in the amount of $463,825.59 because it is not supported by competent evidence. Given the conflicting evidence regarding the victim's actual total medical expenses, we remand for further proceedings on the calculation of restitution.

*Calculation of restitution*

Nied's remaining challenges to the restitution award concern how restitution should be calculated. Because we believe these challenges will arise on remand, we address them to provide the district court with guidance in ordering restitution.

*Costs related to the victim's suicide attempt*

Nied contends that the medical costs arising from the victim's suicide attempt were not a proper subject of restitution because no competent evidence supported the conclusion that the suicide attempt directly resulted from Nied's criminal conduct. We disagree. We have held that restitution may include a victim's "medical costs for the treatment of [his] injuries directly resulting from the crime." *Norwood v. State*, 112 Nev. 438, 441, 915 P.2d 277, 279 (1996). At the sentencing hearing, the victim's wife testified that the victim was depressed about his diminished physical and mental capacity resulting from the crash and that he attempted to commit suicide on the one-year anniversary date of the crash. This testimony and the timing of the victim's suicide attempt directly connected the victim's mental health issues to Nied's reckless driving offense. *Cf. United States v. Thunderhawk*, 860 F.3d 633, 636-37 (8th Cir. 2017) (upholding restitution for medical expenses, including those stemming from a suicide attempt, where the evidence established a causal relationship

between the crime and the event giving rise to the need for medical services); *State v. Jent*, 299 P.3d 332, 335-36 (Mont. 2013) (concluding a victim's suicide attempt was directly related to the criminal offense and thus restitution for those medical expenses was proper). It is unclear from the record whether the district court included the medical costs relating to the victim's depression and suicide attempt in the restitution award. We nevertheless conclude that Nied has failed to demonstrate that such restitution would be inappropriate given the evidence presented at the sentencing hearing and Nied's lack of cogent argument or supporting authority for his contention that the suicide attempt did not directly result from the reckless driving offense. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) (declining to consider issue where appellant failed "to present relevant authority and cogent argument").

*Computation of medical costs*

Nied provides two alternative arguments regarding the proper computation of medical costs when the victim's insurance covers the victim's medical care. First, he contends that restitution for medical costs is limited to the victim's out-of-pocket costs and does not include costs that the victim's insurance company paid. We disagree. We held in *Martinez* that a defendant's restitution obligation for a victim's medical costs is not to be reduced by the amount the victim's insurance company pays. 115 Nev. at 12, 974 P.2d at 135. Thus, Nied's argument that his restitution obligation should not have included medical costs paid by the victim's insurer is foreclosed by *Martinez*.

Second, Nied contends that the restitution for medical costs should be based, at most, on the negotiated amounts that the victim and the

victim's insurance provider actually paid, rather than the higher amounts the medical providers initially billed but subsequently wrote off. We agree, as we have explained that the primary purpose of restitution "is to compensate a victim for costs arising from a defendant's criminal act." *Major v. State*, 130 Nev. 657, 660, 333 P.3d 235, 238 (2014). As compensation is the primary purpose, restitution is limited to that amount which adequately compensates a victim for any economic loss or expense as necessary to make the victim whole, but without providing the victim with a windfall. We conclude that measuring restitution in the amount the victim's medical providers accepted as payment in full for their services to the victim, rather than the higher amount originally billed, is most consistent with, and best promotes, the primary purpose of restitution, as it fully compensates the victim for his or her actual costs. Because we are unable to determine from the record how the district court calculated Nied's restitution obligation for medical costs, we direct the district court on remand to calculate the restitution based on the amounts the victim and his insurer paid rather than the amounts billed.

*Offset by payments from Nied's insurer*

Finally, Nied argues that the restitution amount should have been reduced by the amount Nied's automobile insurance provider paid the victim, less any attorney fees. Nevada statutes are silent on this issue, but the State contends that *Martinez* precludes the reduction of a defendant's restitution obligation based on insurance payments to the victim. *Martinez*, however, concerned only whether a defendant's restitution obligation could be reduced because of payments that a victim received from *his or her own* insurance provider. 115 Nev. at 12, 974 P.2d at 135. It did not address the

SUPREME COURT
OF
NEVADA

(O) 1947A

8

situation presented by this aspect of the case—where the victim receives payments from the *defendant's* insurance provider. Furthermore, the reasoning in *Martinez* convinces us that its holding was not intended to apply to this situation. This court in *Martinez* analogized its holding "to the collateral source doctrine in the law of torts," which precludes a victim's damages from being reduced by the compensation that the victim receives "for his injuries from a source wholly independent of the tortfeasor." *Id.* at 12 & n.5, 974 P.2d at 135 & n.5 (citing *Proctor v. Castelletti*, 112 Nev. 88, 90 n.1, 911 P.2d 853, 854 n.1 (1996)). However, the collateral source doctrine does not apply to compensation that a victim receives from a defendant. *See* 2 Stuart M. Speiser et al., *American Law of Torts* § 8:16 (2022) ("The authorities are well agreed that payments from the tortfeasor himself or herself or through or by the defendant's insurer are not subject to the collateral source rule and may be shown in mitigation or reduction of recovery."); 2 Jacob A. Stein, *Stein on Personal Injury Damages* § 13:5 (3d ed. 2021) ("[T]he collateral source rule [does not] apply to payments made to the plaintiff by the defendant's liability insurer.").

Moreover, as the California Court of Appeal explained in *People v. Bernal*, 123 Cal. Rptr. 2d 622, 630-31 (Ct. App. 2002), reimbursement of the victim's losses by the victim's insurance provider is distinct from payments to the victim by the defendant's insurance provider. Reimbursement from sources "completely distinct and independent from the defendants . . . were simply fortuitous events from which the defendants should not benefit." *Id.* at 630. And, because payments by the victim's insurer can be subject to claims for reimbursement, e.g., through subrogation rights, "equitable principles would tend to place the loss on the

Supreme Court
of
Nevada

(O) 1947A

9

wrongdoing defendant, preclude a windfall recovery by the victim, and reimburse the third party." *Id.* at 630-31. In contrast, when the defendant's insurance provider makes "payments to the victim on his behalf pursuant to its contractual obligation to do so," the provider would have no subrogation rights and thus no recourse; accordingly, if the defendant's restitution is not reduced by the insurance payment, "the victim would receive a windfall to the extent that such payments duplicated items already reimbursed by [the defendant's insurance provider]." *Id.* at 631.

We agree with this rationale and conclude that a district court must offset the defendant's restitution obligation by the amount the defendant's insurer paid to the victim for losses subject to the restitution order. The amount to be offset is limited to the portion of the payments intended to compensate the victim for costs recoverable as restitution; thus, any portion directed to pay attorney fees or excludable damages such as pain and suffering should not be credited against the restitution. *See, e.g.*, *People v. Jennings*, 26 Cal. Rptr. 3d 709, 720 (Ct. App. 2005). Such an offset furthers the primary purpose of restitution—to make the victim whole—without giving the victim a windfall or double recovery.

Here, the record reflects that Nied's automobile insurance provider paid a settlement amount of $50,000 to the victim, 33 percent of which went to the victim's attorneys, but it is unclear whether any portion of the settlement was allocated to the victim's medical costs or the damage to his vehicle—i.e., the losses subject to restitution. On remand, the district court should determine what amount of offset is appropriate based on Nied's insurance settlement.

## CONCLUSION

Although restitution should not provide the victim with a windfall, it should adequately compensate the victim for economic losses or expenses directly related to the criminal offense and necessary to make the victim whole. Expenses may include those associated with a suicide attempt if the evidence establishes a direct relationship to the crime. In calculating restitution, a district court should not consider reimbursement of the victim's losses by the victim's insurance provider, as such would unfairly benefit the defendant; however, the district court should offset payments to the victim by the defendant's insurance provider to avoid duplicating payments and creating a windfall for the victim. Because the evidence presented at the sentencing hearing did not support the restitution award, we vacate the restitution portion of the judgment of conviction and remand for further proceedings on restitution consistent with this decision.

_____, J.
Silver

We concur:

_____, J.
Cadish

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A